UNITED STATES of America, Appellee,

v.

Elwood SCHULAR, Jr.,
Defendant–Appellant.

No. 1116, Docket No. 89–1642.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1990.

Decided June 27, 1990.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, Conn. (Thomas G. Dennis, Federal Public Defender, New Haven, Conn., of counsel), for defendant-appellant.

James I. Glasser, Asst. U.S. Atty., Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty. for the District of Connecticut, New Haven, Conn., Joseph W. Martini, Asst. U.S. Atty., Bridgeport, Conn., of counsel), for appellee.

Before TIMBERS, PRATT, and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Elwood Shular, Jr.,[1] appeals from a judgment entered on November 30, 1989, in the United States District Court for the District of Connecticut (Burns, *Ch.J.*) convicting him of a conspiracy to deal in firearms without a license and sentencing him to a term of imprisonment of thirty-six months. Shular contends that the court impermissibly considered the same factors to support both an enhancement of his offense level and an upward departure from that enhanced level. He asserts that the departure was unwarranted in any event because his co-defendant did not receive a similar upward departure. Finally, he contends that the extent of the departure was unreasonable. We conclude that, while some departure was warranted, Shular is entitled to resentencing in accordance with our intervening decision in *United States v. Won Tae Kim,* 896 F.2d 678 (2d Cir.1990). For the reasons that follow, we vacate the sentence and remand for resentencing in a manner consistent with this opinion.

## BACKGROUND

Shular pleaded guilty to an information charging a conspiracy to deal in firearms without a license, in violation of 18 U.S.C. §§ 371, 922(a)(1) (1988). He stipulated to the following facts as part of his plea agreement with the government. Between January 1988 and February 1989, Shular purchased 177 firearms (175 handguns, including assault pistols, 1 shotgun, and 1 rifle) from D'Andrea's Gun Case, a gun shop in Stratford, Connecticut. He resold these firearms, without a license, to persons whom he knew could not lawfully possess such firearms. The United States Bureau of Alcohol, Tobacco and Firearms (the "Bureau") was alerted to Shular's activity when D'Andrea's Gun Case filed forms for multiple sales, which must be filed with the Bureau whenever a gun dealer sells two or more firearms to the same person within a five-day period.

Between January 30 and February 15, 1989, the Bureau conducted an undercover operation with the object of purchasing firearms from Shular. An undercover agent and a confidential informant contacted co-defendant Ernesto Ortiz, who later introduced them to Shular. The agent and the informant subsequently purchased four pistols from Shular. On February 15, the informant told Shular and Ortiz that he needed six firearms per week to supply a New Jersey gang that was "fighting it out" and that the weapons "were going to have some bodies on them." Shular replied that he could deliver ten firearms per week. Later that day, Shular and Ortiz were arrested by Bureau agents. A search of Shular revealed sales receipts from D'Andrea's Gun Case.

Between August 1988 and January 1989, Bridgeport Police officers had recovered, at separate crime scenes, four pistols from the 177 firearms purchased and resold by

---

1. This is the correct spelling of defendant-appellant's name. The caption conforms with the title given to the action in the district court as required by Federal Rule of Appellate Procedure 12(a).

Shular. One pistol had been used to threaten a person; the second, a semi-automatic pistol, had been discharged in public; the third, another semi-automatic pistol, had been used in a homicide; and the fourth pistol had been found along with bags of marijuana during the execution of a search warrant. The firearms were used or possessed by persons other than Shular, who had no direct involvement with the four crimes in which these pistols were used.

Following Shular's guilty plea, the probation department calculated his sentencing range. Pursuant to Sentencing Guidelines section 2X1.1, the offense level for conspiracy is calculated by using the same base offense level as the offense level for the substantive offense. United States Sentencing Commission, *Guidelines Manual* § 2X1.1(a) (Oct.1987) (hereafter "Sentencing Guidelines"). Here, the substantive offense was unlawful transactions in firearms, which has a base offense level of six. *Id.* § 2K2.3(a)(2). Shular received a five-level enhancement because the number of firearms involved was between 101 and 200, *id.* § 2K2.3(b)(1)(E); a two-level enhancement because he "knew or had reason to believe that a purchaser was a person prohibited by federal law from owning the firearm," *id.* § 2K2.3(b)(2)(A); and an additional two-level enhancement because he "was an organizer, leader, manager, or supervisor" of the criminal activity, *id.* § 3B1.1(c), for a total of fifteen. He was afforded a two-level reduction for acceptance of responsibility for the crime, *id.* § 3E1.1(a), resulting in a final offense level of thirteen. Because he had no prior convictions, a criminal history category of I was indicated, and Shular's sentencing range was twelve to eighteen months. *Id.* Ch. 5, Pt. A sentencing table.

The government requested an upward departure on a number of grounds. The court granted an upward departure on the sole ground of endangerment to public health and safety. *Id.* § 5K2.14. The court stated: "It doesn't take a great deal of imagination to understand that the sales, multiple sales, of weapons, particularly the kinds of weapons sold here and the persons to whom they were sold, is wrought with danger to the public." The court reasoned that the indicated sentencing range did not "take[ ] into consideration the seriousness of this particular offense." Without further explanation, the court determined that the appropriate offense level was nineteen rather than thirteen, resulting in a sentencing range of thirty to thirty-seven months. Shular was sentenced to a term of imprisonment of thirty-six months, a term of supervised release for three years, and was ordered to pay a special assessment of $50.

Co-defendant Ortiz, not an appellant in this case, pleaded guilty to the same conspiracy charge as Shular plus a second charge of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Ortiz' enhanced offense level was fifteen and his criminal history category was III; thus, his sentencing range was twenty-four to thirty months. The government also requested an upward departure from Ortiz' sentence, based in part on section 5K2.14. The court did not depart from Ortiz' sentencing range and sentenced him to a term of imprisonment of twenty-seven months.

## DISCUSSION

Shular contends that the upward departure was based upon factors already considered in the calculation of his enhanced offense level. He argues further that the disparity between his sentence and that of his co-defendant demonstrates that the upward departure for his sentence was inappropriate. He also contends that the magnitude of the departure was unreasonable.

" 'In determining what circumstances to consider in deciding whether to depart from the Guidelines' under 5K2.0," a district court has "wide discretion." *United States v. Cervantes*, 878 F.2d 50, 53 (2d Cir.1989) (citations omitted). That discretion is tempered by the requirement that the court sentence within the Sentencing Guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by

the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see United States v. Paulino*, 873 F.2d 23, 25 (2d Cir.1989) (per curiam). We have noted that the decision to depart upward from the Sentencing Guidelines must be approached with caution. *See Won Tae Kim*, 896 F.2d at 685; *United States v. Rivalta*, 892 F.2d 223, 232 (2d Cir.1989); *United States v. Coe*, 891 F.2d 405, 413 n. 9 (2d Cir.1989); Sentencing Guidelines § 1A4(b) policy statement (despite freedom for courts to depart, courts "will not do so very often"). A departure "based upon a factor listed elsewhere in the Guidelines is allowed only 'in light of unusual circumstances.'" *United States v. Sanchez Solis*, 882 F.2d 693, 699 (2d Cir.1989) (quoting Sentencing Guidelines § 5K2.0 policy statement). Such a departure is examined on the basis of whether a specific "factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction." Sentencing Guidelines § 5K2.0 policy statement.

■ The district court relied upon section 5K2.14, which permits an upward departure "[i]f national security, public health, or safety was significantly endangered." The court provided three reasons supporting departure under section 5K2.14. First, the court found that the number of weapons sold posed a risk to public health and safety. "[G]iven the numbers of firearms that were sold in this instance and the types of firearms that were sold, the fact that some weapons have actually been traced to particular crimes is not surprising." Shular contends that the number of weapons sold was accounted for when he received a five-level enhancement under Sentencing Guidelines section 2K2.-3(b)(1)(E) because the crime involved between 101 and 200 weapons. *See United States v. Uca*, 867 F.2d 783, 788 (3d Cir. 1989) (number of weapons adequately considered by Sentencing Guidelines and "not a circumstance warranting upward departure"). We agree. The government contends that the Sentencing Guidelines have since been amended to permit an enhancement for offenses involving fifty or more weapons, *see* Sentencing Guidelines

§ 2K2.2 application note 2 (Nov.1989), indicating that the Sentencing Commission now believes the October 1987 Sentencing Guidelines did not sufficiently reflect the severity of this factor. Subsequent amendments to the Sentencing Guidelines following a defendant's sentencing "may help clarify ... the Sentencing Commission's initial intent and thus may assist in interpreting a guideline as it read at the time of sentencing." *United States v. Hewitt*, 902 F.2d 1082, 1084 n. 1 (2d Cir.1990) (per curiam). Here, however, the provision for enhancement for the number of firearms involved in Shular's offense was unambiguous, and no interpretation of it is required. *Compare* Sentencing Guidelines § 2K2.3(b)(1)(E) (Oct.1987) *with id.* § 2K2.2(b)(1) & application note 2 (Nov. 1989).

■ Second, the court found that the type of firearms Shular dealt in was not adequately considered in the Sentencing Guidelines, thus justifying a departure. The government contends that the semi-automatic pistols involved here, which could fire up to thirty-six rounds of ammunition, were "more akin to machine guns than handguns." Congress, in enacting various firearm control laws (and the Sentencing Commission in defining their applicable offense levels), divided firearms into two relevant classes, machine guns and all other firearms. *See* 18 U.S.C. § 921(a)(3); I.R.C. § 5845(a), (b). These statutory definitions do not refer to semi-automatic weapons as a specific class of firearms. The Sentencing Guidelines reflect this congressional treatment of semi-automatic weapons by including them within the class of firearms that are not machine guns. Even upon reconsideration in the 1989 amendment to the Sentencing Guidelines, the Sentencing Commission adhered to the statutory classifications and did not specifically distinguish semi-automatic firearms. *See* Sentencing Guidelines § 2K2.2 application note 2 (Nov. 1989) (departure allowed for specific "military type weapons (*e.g.* machine guns, automatic weapons, assault rifles)," but no other firearms).

The government contends that, by amending the Sentencing Guidelines in regard to the type of firearms involved, *see id.,* the Sentencing Commission recognized the deficiency in the earlier version of the Guidelines. However, the Sentencing Commission properly adopted the congressional definitions for firearms when distinguishing among types of weapons in the October 1987 version of the Sentencing Guidelines.

■ The court's first two reasons, based on factors already considered in the Sentencing Guidelines as enhancements and used to establish Shular's offense level, do not provide sufficient reasons to depart from the sentencing range. The court did not explain the inadequacy of the Sentencing Guidelines' treatment of these factors or provide any reason why Shular's offense is so unusual as to require a sentence more severe than other illegal firearms traffickers. *See Sanchez Solis,* 882 F.2d at 699. Mere dissatisfaction with the Sentencing Guidelines is not a sufficient reason for departure. *See United States v. Palta,* 880 F.2d 636, 640 (2d Cir.1989); *United States v. Aguilar–Pena,* 887 F.2d 347, 353 (1st Cir.1989). If the adequacy of the Sentencing Commission's consideration of a factor were left to the courts, disparities in sentences for similar conduct would result, something the Sentencing Commission has strived to avoid. *See* 28 U.S.C. § 991(b)(1)(B); *see also Aguilar–Pena,* 887 F.2d at 353; *Cervantes,* 878 F.2d at 54.

■ The court presented a third reason to justify the upward departure for endangering public safety. It found that Shular's customers for these firearms were drug traffickers and others who would use the firearms in their criminal activities, a factor not considered in the Sentencing Guidelines and thus justifying a departure. Shular knew that the purchasers could not legally obtain these weapons, and this fact was accounted for in the two-level enhancement under Sentencing Guidelines section 2K2.3(b)(2)(A) that he received. But section 2K2.3(b)(2)(A) refers to those persons who are disqualified statutorily from purchasing firearms, such as those who the seller knew or had reasonable cause to believe were persons under indictment for, or convicted of, a felony, fugitives from justice, illegal drug users, persons "adjudicated as a mental defective or ... committed to any mental institution," illegal aliens, persons dishonorably discharged from the armed forces, or others whose purchase or possession of firearms would have violated state law. 18 U.S.C. § 922(d), (b)(2). The Sentencing Commission, in enacting section 2K2.3(b)(2)(A), did not take into account the imminent risk to public safety presented by sales to persons who, regardless of their ability to *obtain* firearms legally, intend to commit violent crimes with firearms provided by a seller who knows their customers' criminal intentions. In this case, Shular purchased four pistols for the Bureau's undercover agent and the informant and, when told that more weapons were needed for a gang war, offered to furnish ten firearms a week. Additionally, Shular admitted to the probation officer who wrote the presentence investigation report that he purchased firearms for drug dealers. As to the majority of the firearm transactions, including the four firearms found at crime scenes in Bridgeport, there was no proof of Shular's knowledge of the purchasers' intent, and Shular never was charged as an accomplice in any of the offenses in which his firearms were involved. Nevertheless, the court had sufficient evidence to find that Shular knew that some of his customers would advance their criminal activities through the use of the firearms he sold them. The Sentencing Guidelines do not account for this knowledge as a sentencing factor. For this reason, the court properly departed from Shular's sentencing range. Where the Sentencing Guidelines do not account for a particular factor, the court may rely on that factor as a basis to depart from the sentencing range.

■ Shular contends that the district court's failure to depart when sentencing Ortiz for the same conduct indicates that the departure was inappropriate in his case. Unlike Shular, Ortiz' offense level was not enhanced because he had no aggravating role in the criminal activity. Although Or-

tiz and Shular stipulated to the same facts, Shular stated in a letter to the court that, "[o]ther than the guns I bought for the agents when Ortiz was in the car, he had nothing to do with me on any other guns I bought and sold." A co-defendant's sentencing range is irrelevant in determining the defendant's sentence where there are differing circumstances. *United States v. Rios,* 893 F.2d 479, 481 (2d Cir.1990) (per curiam); *see also Sanchez Solis,* 882 F.2d at 699.

 Finally, Shular contends that the extent of the departure was unreasonable. The court, sentencing Shular without the benefit of *Won Tae Kim,* 896 F.2d at 681, or *Coe,* 891 F.2d at 412, departed upward by moving from an offense level of thirteen to that of nineteen without considering the adequacy of the levels in between. While the court did not have guidance from *Won Tae Kim,* we must apply its standard on Shular's present appeal. *See Won Tae Kim,* 896 F.2d at 681 (referring to retroactive applications of *Palta,* 880 F.2d at 640, and *Cervantes,* 878 F.2d 50); *see also Griffith v. Kentucky,* 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). The next higher offense levels must be considered in sequence when departing from the Sentencing Guidelines range. *Won Tae Kim,* 896 F.2d at 685; *see also Coe,* 891 F.2d at 412 (departure under Part 4A for inadequate criminal history category by sequential consideration of next higher categories). As we noted in *Won Tae Kim,* gradually moving from one level to more serious levels allows the court to consider whether the next levels "adequately reflect the seriousness of the defendant's conduct" and "afford[s] the [court] an opportunity to compare the defendant's conduct, with its aggravating circumstances, to the type of conduct for which the [Sentencing] Commission has prescribed more severe punishment." *Won Tae Kim,* 896 F.2d at 685. This gradual approach is especially appropriate in the case at bar because we find only one reason to justify departure—Shular's knowledge of the criminal intentions of his customers—and proof of that knowledge is limited to only a few of the firearms he purchased. We therefore vacate the sentence and remand for resentencing in a manner consistent with this opinion.

## CONCLUSION

The sentence is vacated and the case is remanded for sentencing in a manner consistent with this opinion. The mandate shall issue forthwith.