**UNITED STATES of America, Appellee,**

v.

**Angelo PERGOLA,
Defendant–Appellant.**

**No. 1050, Docket 90–1564.**

United States Court of Appeals,
Second Circuit.

Argued March 28, 1991.

Decided April 10, 1991.

Seth L. Marvin, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for E.D.N.Y., Susan Corkery, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Colleen P. Cassidy, New York City (The Legal Aid Soc., Federal Defender Services Unit, New York City, on the brief), for defendant-appellant.

Before OAKES, Chief Judge, and KEARSE, Circuit Judge.[1]

KEARSE, Circuit Judge:

Defendant Angelo Pergola appeals from a judgment of the United States District Court for the Eastern District of New York, Reena Raggi, *Judge*, convicting him, following his plea of guilty, of two counts of mailing threatening communications, in violation of 18 U.S.C. § 876 (1988). He was sentenced principally to two concurrent prison terms of 60 months, an upward departure from the range specified by the federal Sentencing Guidelines ("Guidelines") to the maximum sentence permitted on each count, to be followed by three years of supervised release. On appeal, Pergola contends (1) that the district court erred in not considering a less extreme upward departure, and (2) that the record does not support the departure imposed. For the reasons below, we reject both contentions and affirm the judgment.

## I. BACKGROUND

The events are not in dispute. In 1981, Pergola's former wife confronted him and complained about his harassment of her. Pergola shot and killed her. He pleaded guilty and was convicted in state court of first-degree manslaughter, for which he was sent to prison.

In 1986, about a month after being released on parole, Pergola met one Gale Worsley and became involved with her, living with her for nearly two years. During this period their relationship deteriorated, and Pergola began to threaten Worsley.

Among other things, he told her he should not have killed his first wife but should merely have permanently maimed her, and he threatened that Worsley would never again be able to look at herself in the mirror with a smile. After Worsley terminated their relationship, Pergola told her, *inter alia,* "If I can't have you, nobody will."

Worsley complained to the authorities. After an investigation and hearings, in the course of which Pergola refused to agree to cease his contacts with Worsley, Pergola's parole was revoked on account of his threats. He was returned to prison to serve the 19–month remainder of his homicide sentence.

While in prison, Pergola wrote threatening letters to Worsley, as well as to her ex-husband. When prison officials intervened at Worsley's behest and forbade any more letters to Worsley, Pergola persisted by addressing the letters to her using her middle and maiden names. In the course of six months, Pergola sent some 60 threatening letters. In addition, he made a threatening telephone call that Worsley recorded.

As a result, on the date Pergola was to be released from service of his state sentence, he was arrested on federal charges, *i.e.,* 16 counts of sending threatening letters in violation of 18 U.S.C. § 876. Pergola admitted having written numerous threatening letters to Worsley and said that she "should be afraid of me, considering what happened to my first wife." He said he intended to contact Worsley once he was released, even if she obtained an order prohibiting him from doing so. A psychological evaluation of Pergola concluded that the pathological jealousy that led him to kill his first wife was unlikely to change and that it was "imperative ... that clear attention be paid to the ongoing danger Mr. Pergola may pose to his recent girlfriend and the likelihood of him [*sic*] developing

---

**1.** Judge McLaughlin, originally a member of the panel, recused himself. Pursuant to § 0.14(b) of the Rules of this Court, this appeal is being decided by Chief Judge Oakes and Judge Kearse, who are in agreement on this opinion.

pathological jealousy in future relationships."

Thereafter, Pergola pleaded guilty to two of the counts against him, in full satisfaction of the indictment. He advised the court that he was aware that the maximum prison terms he faced on the two counts totaled 10 years.

A presentence report ("PSR") was prepared. It concluded that, considering the circumstances of the offense and Pergola's personal criminal history, the Guidelines called for imprisonment of 15 to 21 months. It suggested that an upward departure pursuant to Guidelines § 5K2.3 might be appropriate because Pergola's actions had caused severe psychological distress to Worsley. Worsley wrote the district court stating that as a result of Pergola's conduct she could not sleep, could not form close relationships, and lived in constant fear of being killed. The government urged the court to depart upwardly from the Guidelines pursuant to, *inter alia*, § 5K2.3 because of the extreme psychological injury to Worsley or § 5K2.8 because of the extreme character of Pergola's conduct.

The district court advised Pergola that it was "prepared to hold a hearing on whether or not the victim had suffered emotional and behaviorial [*sic*] disfunction [*sic*]" and to see and hear the witness herself in order "to assess whether or not this kind of stuff, received day in and day out, could have had a severe effect on her emotional and psychological well[-]being knowing that the defendant had killed one women [*sic*] that wasn't prepared to reciprocate his views of her." (Hearing Transcript, September 14, 1990 ("Tr."), 16.) Pergola declined to request a hearing.

After hearing argument, the court concluded that an upward departure was warranted and decided to impose the maximum sentence of five years' imprisonment on each count, though concurrently rather than consecutively. As set forth in greater detail below, the court discussed at length Pergola's conduct and noted that there was perhaps overlap between considerations of the conduct and of its psychological effects. The court stated that

> The case is an extraordinary one because the threats were so repetitious, because they were so particular, as to what would happen to Mrs. Worseley [*sic*], and because the defendant is, of course, an individual who under frightening similar circumstances took the life of his first wife. I said a moment ago that many of the statements made to Mr. [*sic*] Worseley [*sic*] referred to this and I found that particularly probative in assessing how much terror this must have placed in her, . . . .
>
> . . . . [T]here is just to[o] much reference to violence, and by a person who carried it out in the past, not to say this victim has not been subjected to substantial impairment.
>
> It's not my understanding of the sentencing court to protect Mrs. Worseley [*sic*]. It's, however, my function to sentence in a way that reflects the seriousness of the crime and societies [*sic*] intolerance for it.
>
> I find upward departure to the maximum term of the law is required by this case.

(Tr. 28–29.) In making its upward departure, the court stated that though it was relying on § 5K2.3 (injury to the victim), it did not discount the applicability of § 5K2.8 (extreme conduct).

Judgment was entered accordingly, and this appeal followed.

## II. DISCUSSION

■ On appeal, Pergola argues (1) that the sentence was unlawful because the district court failed to consider each possible intermediate upward step of departure less than the maximum, and (2) that in any event the record does not support the departure imposed. Preliminarily, we note that the view that some upward departure from the Guidelines range, which was at most 15 to 21 months, was required was amply supported by the record. Pergola had been returned to prison to serve the remaining 19 months of his state prison term after his parole violation, and it was

during that period that he sent the barrage of threatening letters that formed the principal basis for the present prosecution. Plainly it was reasonable to infer that a Guidelines calculation that would result in incarceration for a similar period did not adequately take into account the likelihood that Pergola would continue to commit these crimes. As to Pergola's challenges to the extent of the departure, we conclude for the reasons below that the record is sufficient to justify the departure arrived at and that the court's consideration of the appropriate degree of departure is adequately reflected in the record.

### A. *Sufficiency*

■ Pergola's challenge to the sufficiency of the evidence to support the maximum upward departure is based on the district court's statement that it was relying on Guidelines § 5K2.3, which focuses on harm to the victim. Implicit in this challenge is the proposition that evidence as to Pergola's conduct is thus not relevant to support the court's conclusion. We disagree, for in this case it would have been impossible to compartmentalize the inquiry, and it is plain that the district court did not do so.

■ Where the psychological injury caused by the defendant results from prolonged and repeated misconduct, it is difficult to assess the effect without considering the conduct itself. Accordingly, the court explicitly refused to discount the applicability of § 5K2.8 and appropriately noted the "possible ... overlap" of that section with § 5K2.3 "when what we're talking about is prolonged emotional pain, and extreme psychological injury." (Tr. 19.) Addressing first the government's argument that a maximum upward departure was warranted by Pergola's conduct itself, which included sending some 60 threatening letters in a six-month period, the court discussed that conduct at some length, noting his "not being willing to promise the parole officer that he would leave his girlfriend alone," the "evidence that this defendant was bent and determined on carrying out the threats he made over and over and over again," and the fact that this was

not a matter of "an isolated threat" but rather "a defendant who had to be incarcerated and ... even incarceration didn't put a stop to the threats." (*Id.* at 8–9.) The court noted that it was entitled to "consider the absolute persistence of the defendant despite the intervention [*sic*] of legal authorities" and stated that it was "thinking of the full scope of threatening activity engaged in by Mr. Pergola against the lady in question." (*Id.* at 9, 12.) Thus, the court explicitly considered the "possibility of a 5(k)2.8 departure on the ground the conduct is extreme and the victim was subject to unusual and prolonged degradation," and thought such an increase possible "along with" an increase under § 5K2.3 for emotional and psychological harm to the victim. (Tr. 13.)

Further, even in the context of the § 5K2.3 discussion, the court emphasized Pergola's conduct, noting (with only slight hyperbole) that the threats had arrived day in and day out, and that Pergola's repeated references to killing his first wife were "particularly probative in assessing" (Tr. 28) how much Worsley was terrorized:

> I know as I sit here today, that the defendant's wife had an order of protection against him which he violated shooting her dead. I also know that the threats made to the victim in this case, did not threaten her in the abstract, but on a few occasions referred specifically to the death of the wife. I guess that was to insure that she knew exactly how serious the defendant was....

(Tr. 15.) We conclude that the court appropriately considered Pergola's conduct in order to assess the harm to his victim and that its finding of a "severe" emotional and behavioral "impairment as result of the communication received" (*id.*) was sufficient, in light of the admitted conduct that led to that injury, to justify an upward departure to the maximum prison term allowed on each count. Accordingly, we reject Pergola's contention that the record is insufficient to support the upward departure that was made.

**220**

### B. *Explanation on the Record*

■ Pergola also contends that before making this departure the court was required to consider seriatim each possible step upward from the Guidelines range calculated by the PSR and to specify its reasons for rejecting each intermediate step. In support of this contention, he relies principally on *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), and *United States v. Schular*, 907 F.2d 294 (2d Cir.1990). In those cases, we ruled that when the sentencing court is considering an upward departure under Ch. 5, Part K of the Guidelines,

> the judge should consider the next higher [offense] levels in sequence to determine if they adequately reflect the seriousness of the defendant's conduct. Doing so will afford the judge an opportunity to compare the defendant's conduct, with its aggravating circumstances, to the type of conduct for which the Commission has prescribed more severe punishment.

*United States v. Kim*, 896 F.2d at 685; *see United States v. Schular*, 907 F.2d at 299. We do not find these cases entirely controlling here.

In both *Kim* and *Schular*, the court was focused solely on the defendant's conduct—in *Kim* on the defendant's unlawful importation of aliens and possession of counterfeit currency, and in *Schular* on the defendant's sales of weapons to persons known to have criminal intent. *See also United States v. Coe*, 891 F.2d 405, 412–13 (2d Cir.1989) (explanation required with respect to Guidelines Ch. 4, Part A increase in criminal history category); *United States v. Cervantes*, 878 F.2d 50, 55 (2d Cir.1989) (same). In none of these cases was there any question of a departure based on the effect of the crimes on the victims. Though in considering either type of circumstance the sentencing court should make clear on the record that it has considered lesser departures than the one eventually arrived at, the requirement of a specific step-by-step calculation and comparison is not particularly apt where, as here, (a) harm to the victim is at issue, and (b) the type of harm at issue is psychological rather than physical, making observation difficult and quantification nearly impossible. In a case such as the present one, there are inherent difficulties in any attempt at calibration and we do not fault the court for not attempting to discuss each possible step of upward departure.

The record in the present case makes it sufficiently clear that the court had considered an interim-level departure. It stated that it found "upward departure to the maximum term of the law is required by this case." (Tr. 29.) Implicit in any statement that the maximum is required is the thought that anything less would be insufficient. In light of this statement against the background of the court's extended discussion of the circumstances, the record gives adequate indication that the court considered a departure of less than the maximum prison term for each count. Further, the court in fact did not impose the maximum possible sentence overall, for it could have sent Pergola to prison for 10 years instead of five by requiring the sentences to run consecutively. In all, we conclude that no remand for reconsideration of the sentence is required.

### CONCLUSION

We have considered all of Pergola's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.