**UNITED STATES, Appellee,**

v.

**Parris H. PHILLIPS, Defendant, Appellant.**

**No. 91–1176.**

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1991.

Decided Dec. 27, 1991.

Rehearing and Rehearing En Banc Denied Feb. 13, 1992.

See also 732 F.Supp. 255.

Michael J. Liston, by Appointment of the Court, with whom Palmer & Dodge, Boston, Mass., was on brief, for defendant, appellant.

Michael J. Pelgro, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before TORRUELLA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

TIMBERS, Senior Circuit Judge:

Parris Phillips appeals from a judgment entered on a plea of guilty to a federal firearms offense, in violation of 18 U.S.C. § 922(a)(3) (1988). His appeal brings up for review the propriety of the forty-six month sentence imposed on him—the sole issue on appeal.

Under the Sentencing Guidelines, the district court imposed a two level upward adjustment because Phillips knew or had reason to believe that a purchaser of the firearms was a person prohibited by federal law from owning a firearm. U.S.S.G. § 2K2.3(b)(2)(A).

Phillips contends that, since the district court defined the "person prohibited by

* Of the Second Circuit, sitting by designation.

federal law" as a person taking guns in violation of § 922(a)(3), the underlying offense to which Phillips pled guilty, the court effectively "double counted" his actions, using them to establish the base offense level *and* to establish the two level upward adjustment.

We affirm.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On February 12, 1990, Phillips was indicted by a grand jury which charged nine counts of conspiracy and the unlawful transportation and receipt of firearms. Phillips, a Massachusetts resident, learned that the State of Georgia had less stringent licensing procedures regarding the purchase of firearms than those then in effect in Massachusetts. He therefore devised a scheme which included wiring large sums of money to a contact who was a resident of Georgia. From February 1989 to May 1989, the contact took the wired money to United Loan and Firearms, a pawn shop and gun store located in Augusta, Georgia. On four separate trips, the contact purchased from the gun store a total of thirty semi-automatic guns and pistols of various calibers. She then personally transported the guns from Georgia to Massachusetts, usually by bus and in the company of her small child. She then delivered the guns to Phillips who distributed them to various recipients, including co-defendants Kevin Smith, London Williams, Troy Smith, Michael Davis, and Devon Brown. The contact was paid an additional fee for her deliveries. The guns were recovered by the Boston police under varying circumstances ranging from a seizure in a Boston high school, to another seizure in connection with a drug related arrest.

Each of the four separate shipments was the basis of a separate count in the indictment for unlawful interstate transportation and receipt of firearms in violation of § 922(a)(3), and a corresponding count for unlawful delivery of firearms in violation of § 922(a)(5). On September 11, 1990, Phillips pled guilty to all counts.

On November 14, 1990, he was sentenced by United States District Judge Robert E. Keeton pursuant to the Sentencing Guidelines in effect at the time of his sentencing. Pursuant to guidelines § 2K2.3, the court addressed Phillips's violations of §§ 922(a)(3) and (a)(5) to establish the base offense level of six. The court then made a three level upward adjustment because the offense involved thirty firearms. § 2K2.3(b)(1)(C). Finding that Phillips was an organizer or leader of criminal activity involving five or more participants, the court made a further four level adjustment. This brought the offense level to thirteen. § 3B1.1(a). Finding that Phillips had obstructed justice by offering materially false statements to the probation department during the presentence investigation, the court made another two level upward adjustment. This brought the offense level to fifteen. § 3C1.1. Phillips does not challenge on this appeal any of these upward adjustments.

The court made an additional two level upward adjustment pursuant to § 2K2.3(b)(2)(A), having found that the firearms transfers to Phillips and the other co-defendants were made to persons prohibited by § 922(a)(3) from owning a firearm.

In view of the offense level of seventeen, a criminal history computation in Category IV due to past convictions, and the severity of the instant offenses, the court imposed a 46 month prison sentence, to be followed by 36 months of supervised release. The court ordered that the prison sentence be served consecutively to a state prison sentence which Phillips was serving. This sentence was at the high end of the applicable sentencing range of 37 to 46 months, according to the Pre–Sentence Report.

Phillips challenges the propriety of the two level upward adjustment pursuant to § 2K2.3(b)(2)(A). He asserts that the adjustment was designed to deal with sales to a particular class of individuals who are prohibited by statute from ever owning a firearm as that class is defined by 18 U.S.C. § 922(g), and not to members of the general class of individuals who commit firearms offenses such as obtaining a firearm brought across state lines. Phillips further contends that use of the very stat-

ute under which he was convicted as a means of triggering the upward adjustment constitutes double counting of his illegal acts for the purpose of sentencing.

For the reasons which follow, we find no merit in Phillips' contentions.

## II.

■ Since resolution of this case depends upon our legal interpretation of the Guidelines, namely § 2K2.3(b)(2)(A), our review is *de novo. United States v. Veilleux,* 949 F.2d 522, 528 (1st Cir.1991). *See also United States v. Irabor,* 894 F.2d 554, 555 (2d Cir.1990); *United States v. Shoulberg,* 895 F.2d 882, 884 (2d Cir.1990).

■ As a preliminary matter, barring any *ex post facto* concerns, a defendant ordinarily should be sentenced according to the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4); *United States v. Harotunian,* 920 F.2d 1040, 1041–42 (1st Cir.1990). Phillips was sentenced on November 14, 1990 for activities which occurred between February and May of 1989. Since sentencing under the guidelines in effect at the time of his sentencing could result in a higher calculated offense level, Phillips was entitled to be sentenced under the 1988 Guidelines to alleviate any *ex post facto* concerns. Neither side challenges this conclusion. (In this regard, we also acknowledge that § 2K2.3(b)(2)(A) no longer exists in the form which we now consider. The November 1, 1989 amendments to the guidelines replaced that provision with § 2K2.2(b)(3), which provides for an upward adjustment in the event that the defendant violates either § 922(d), § 922(b)(1) or § 922(b)(2).)

### (A)

■ Phillips · was convicted under § 922(a)(3), which prohibits any unlicensed person from "transport[ing] into or receiv[ing] in the State where he resides ... any firearm purchased or otherwise obtained by such person outside that State...." Phillips now challenges the two level upward adjustment made when he was sentenced pursuant to § 2K2.3(b)(2). The language of that ad-

justment provides that "[i]f the defendant knew or had reason to believe that a purchaser was a *person prohibited by federal law* from owning the firearm," his sentence may be increased by 2 levels. § 2K2.3(b)(2)(A) (emphasis added). The district court applied the two level upward adjustment on the ground that Phillips at some point transferred the guns to other Massachusetts residents who, once they received the guns, were guilty also of violating § 922(a)(3). The court also took into account the fact that Phillips himself was convicted of receiving firearms and aiding and abetting the receipt of firearms transported in interstate trade pursuant to § 922(a)(3), and that Phillips himself also was a person technically prohibited by federal law from ownership or possession of a firearm.

Phillips now asserts that the very behavior which provided the foundation for his own base offense, his conviction under § 922(a)(3), subsequently was reexamined to justify a further upward adjustment for sale to a third person prohibited by federal law from ownership of a firearm. The district court expressly rejected this claim upon Phillips' motion for reconsideration. As support for his claim that the court engaged in "double counting", Phillips cites *United States v. Schular,* 907 F.2d 294 (2d Cir.1990).

In *Schular,* the defendant pled guilty to conspiracy to deal in firearms without a license, pursuant to § 922(a)(1), a statute which prohibits all unlicensed persons from importing, manufacturing, dealing, shipping, transporting or receiving firearms. At the time of sentencing, the court made a five level upward adjustment, since the number of firearms involved was between 101 and 200. § 2K2.3(b)(2)(A). *Schular, supra,* 907 F.2d at 296. The government requested a further upward adjustment beyond the range established by the applicable guidelines on the sole ground of endangering health and safety. *Id.* The district court found justification for this additional upward adjustment from level thirteen to level nineteen, solely because of the serious threat of danger to the public welfare posed by such a large quantity of weapons being dispersed throughout the area. On

appeal, the Court of Appeals for the Second Circuit concluded that, since the number of firearms clearly was taken into account in the five level enhancement pursuant to § 2K2.3(b)(2)(A), the further upward adjustment on the ground of public safety constituted double counting under the guidelines. *Id.*

■ In our view, *Schular* is distinguished from the instant case. *Schular* was concerned with a complete departure from the sentencing guidelines. Under § 5K2.0, the court is allowed to exercise its discretion in deviating completely from the guidelines only when the court can establish the existence of some relevant factor that was not accounted for in the guidelines. 18 U.S.C. § 3553(b). Such complete deviations should be rare. *Schular, supra,* 907 F.2d at 297.

In the instant case, the court sought no such deviation from the guidelines; rather it sought only to apply the guidelines already in existence. Our analysis therefore differs from that in *Schular,* since our primary concern is not whether the district court properly relied on some factor not covered by the guidelines. Rather, our analysis focuses on whether the guidelines, as they stand, effectively encompass the activities of Phillips.

Furthermore, unlike *Schular,* Phillips was sentenced for his base offense of causing the transportation of, and receiving guns across state lines without a license. Phillips' sentence was enhanced because he transferred the guns to other Massachusetts residents who were prohibited from possessing guns purchased in Georgia by federal law. § 922(a)(3). The sale of guns to others prohibited from purchasing them was not an element of the base offense to which Phillips pled guilty, *i.e.* transporting guns across state lines without a license, regardless of the identity of the recipient.

The Sentencing Commission also has recognized that varying shades of the same conduct should be considered in sentencing. In some guideline provisions, violations of particular federal statutes may support an upward adjustment. For example, in § 2K2.2(b)(3) (the provision that modified

the adjustment which we now consider), the Commission provided that, in addition to calculating the base offense level for a firearms violation, a sentencing court may adjust the level upward if the defendant has been convicted under either § 922(d), § 922(b)(1) or § 922(b)(2).

The Court of Appeals for the Third Circuit has recognized that in some cases an overlap of conduct should be taken into account in sentencing. *United States v. Uca,* 867 F.2d 783, 789 (3d Cir.1989) ("[§ 2K2.3(b)(2)(A) and (B)] both resemble provisions in [18 U.S.C.] section 922. In fact, these two sections provide for a heightened offense level where offenses within the section compound one another."). Commenting on this overlap, that court stated that "since factors in [§ 2K2.3(b)(2)] represent combinations of criminal acts leading to increased offense levels, the Guidelines clearly contemplate that shades of unlawful activity exist." *Id.* We also acknowledge that there will be some situations where conduct that is used to set the base offense level also will be considered when applying upward adjustments.

In short, we decline to hold that application of § 2K2.3(b)(2)(A) to Phillips' sentencing based on his transfer of the guns to other persons prohibited from owning the guns can be construed as double counting.

### (B)

■ Aside from Phillips' assertion regarding double counting, he further contends that § 2K2.3(b)(2)(A) is triggered only when the "person prohibited by federal law from owning the firearm" is a member of the class of statutorily prohibited possessors defined in § 922(g). That section prohibits seven classes of individuals from possessing, shipping, transporting in interstate commerce or receiving any firearm or ammunition. Those classes include anyone convicted of a crime punishable by imprisonment for a term exceeding one year, any fugitive from justice, any unlawful user or addict of a controlled substance, anyone adjudicated as a mental defective or who has been committed to a mental institution, any illegal alien, anyone dishonor-

ably discharged from the Armed Forces, and anyone who has renounced United States citizenship.

An arguably sufficient answer to Phillips' contention would seem to be that co-defendant Troy Howell, one of the individuals to whom Phillips transferred a smuggled firearm, appears to have been a convicted felon and, therefore, a statutorily prohibited possessor under § 922(g). The § 922(g) status of Troy Howell was, however, not developed in the district court. While we are free to affirm on any ground supported by the record, the scant presentation of this issue below argues against our relying on it. We choose, therefore, to address the merits of Phillips' claim.

Again Phillips takes his cue from *Schular*. It is noteworthy, however, that appellant in *Schular* also faced, without objection, a two level enhancement under § 2K2.3(b)(2)(A):

> "The court presented a third reason to justify the upward departure for endangering public safety. It found that Schular's customers for these firearms were drug traffickers and others who would use the firearms in their criminal activities.... *Schular knew that the purchasers could not legally obtain these weapons,* and this fact was accounted for in the two-level enhancement ... that he received."

*Schular, supra,* 907 F.2d at 298 (emphasis added). The two level enhancement does not appear to be predicated on any knowledge on the part of Schular that the purchasers were convicted felons, illegal aliens, or members of any other class specifically prohibited from ownership of weapons by § 922(g). Rather, the enhancement appears to have been based on the fact that Schular knew, or had reason to believe, that any purchaser receiving weapons from him must be doing so in violation of some other federal law prohibiting ownership or possession.

Moreover, Phillips looks to *Schular* to support his view that § 922(g) provides an exclusive listing of those persons who, within the meaning of § 2K2.3(b)(2)(A), are prohibited from owning firearms. Phillips reads too much into the *Schular* opinion. It sought only to provide discrete examples of disqualified persons, rather than an exhaustive list. *Schular, supra,* 907 F.2d at 298. While it is true that much of the opinion invokes the statutory classifications of § 922(g), the court's reference to other diverse sections, such as § 922(b)(2), which prohibits the sale of a firearm to any person where the purchase or possession by such person would violate state law, suggests that the term "prohibited by federal law" should not be restrictively interpreted.

Of even greater importance is the fact that in the plain language of § 2K2.3(b)(2)(B) we see no reason to limit the definition of a person "prohibited by federal law from owning a firearm" to that class of persons enumerated in § 922(g). This provision was designed to address a wide variety of firearms-related offenses. It neither prohibited nor encouraged the implication of a sentencing adjustment as a result of circumstances which gave rise to a conviction under § 922(a)(3).

### III.

To summarize:

Since we find that § 2K2.3(b)(2)(A) can be invoked properly by conduct actionable under 18 U.S.C. § 922(a)(3), we hold that Phillips' sentence, which included an upward adjustment of two levels for sale to a person prohibited by federal law from owning a firearm, was appropriate.

*Affirmed.*