UNITED STATES of America, Appellee,

v.

**David E. CAMPBELL, also known as Anthony Jarrett Alton, also known as nfn Pecos, Defendant–Appellant.**

No. 1053, Docket 91–1624.

United States Court of Appeals, Second Circuit.

Argued March 12, 1992.

Decided May 22, 1992.

Sarah A. Chambers, Asst. Federal Public Defender, New Haven, Conn. (Thomas G. Dennis, Federal Public Defender, of counsel) for defendant-appellant.

Althea E. Seaborn, Asst. U.S. Atty., District of Connecticut, Bridgeport, Conn. (Albert S. Dabrowski, U.S. Atty., District of Connecticut, New Haven Conn., of counsel) for appellee.

Before: OAKES, Chief Judge, WALKER, Circuit Judge, and POLLACK, District Judge.*

WALKER, Circuit Judge:

The United States Sentencing Guidelines (the "Guidelines") provide an elaborate framework for determining the proper sentence to be imposed in federal criminal cases. The question on this appeal is what procedures district judges must follow in deciding how much to depart from that framework.

On July 23, 1991, defendant David E. Campbell pled guilty to one count of illegal re-entry by an alien deported as an aggravated felon, in violation of 8 U.S.C. § 1326. The applicable guideline range for that crime for a defendant with Campbell's criminal history is 15–21 months. The district court, however, sentenced Campbell to 54 months imprisonment—an upward departure of some 33 months. Defendant appeals that sentence on two grounds. First, he contends that the district court improperly "double counted" certain factors in determining the extent of the upward departure. Second, defendant urges that, in any event, the more than

---

* Hon. Milton Pollack, District Judge, United States District Court for the Southern District of New York, sitting by designation.

two-fold departure from the guidelines range was unreasonable.

*Background*

Defendant Campbell, a citizen of Jamaica, first entered the United States in May of 1982, as a lawful permanent resident. Campbell settled in Connecticut, but soon ran afoul of the law. During 1984, Campbell went on a crime spree that included attempted murder, selling controlled substances, possession of a handgun, and interfering with a police officer. Connecticut police arrested Campbell in October of 1984, and the State brought three separate indictments against him. The first indictment charged one count of attempted murder. The second charged a single count of sale of a controlled substance. The third charged two counts of sale of a controlled substance as well as one count of unlawful possession of a handgun and another of interfering with a police officer.

On May 24, 1985, Campbell pled guilty to all three indictments in Bridgeport Superior Court in Connecticut. The court sentenced Campbell to 10 years imprisonment on the attempted murder indictment, and to lesser included sentences on the other two indictments. The court suspended the sentence after five years.

Campbell served his time on the attempted murder charge until April 4, 1988, when the Immigration and Naturalization Service (INS) deported Campbell to Jamaica pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii) (West Supp.1992), which authorizes the INS to deport lawfully admitted aliens subsequently convicted of aggravated felonies.

On October 1, 1989 Campbell re-entered the United States, carrying a passport and green card bearing the name Alton Jarrett. Campbell did not file a formal application for permission to re-enter, as is required for felons deported following arrest. 8 U.S.C. § 1326(a)(2)(A).

Upon his return to the United States, Campbell promptly resumed his life of crime in Connecticut. On November 11, 1989, Connecticut police arrested Campbell and charged him with selling a controlled substance. While those charges were pending, Connecticut police arrested Campbell in February of 1991 for a robbery committed in December of 1990.

On June 13, 1991 the Connecticut court sentenced Campbell to 20 years in prison on the November 11, 1989 narcotics count, with the final year of the prison term suspended, to be followed by 5 years probation. Campbell, later pled guilty on the December 1990 robbery, in exchange for a promised 15 year term to be served concurrently with the 19 year term on the narcotics count.

While these state proceedings were underway, the INS learned of Campbell's presence in the United States and initiated criminal proceedings against him. On March 13, 1991 a federal grand jury in Connecticut returned a one count indictment charging Campbell with unlawful presence in the United States. On July 23, 1991, Campbell pled guilty to that one count indictment. As part of the plea agreement, the government agreed to take no position on whether an upward departure was appropriate.

Following the plea, the probation department prepared a presentence report and Judge Cabranes held a sentencing hearing on September 19, 1991. The district court first recounted the sentencing calculations contained in the presentence report. The presentence report stated that under § 4A1.1 of the Sentencing Guidelines, defendant's past history of crime amounted to a total of nine criminal history points, which translates to a criminal history category of IV. The presentence report also calculated the offense level under § 2L1.2. Section 2L1.2(a) of the November 1, 1990 Guidelines (the Guidelines in effect at sentence and to which all references are made unless otherwise indicated) provides a base offense level of 8. The presentence report recommended enhancing this by 4 levels under § 2L1.2(b)(1) since Campbell had previously been deported after a felony conviction. The report also recommended reducing the offense level by two to reflect Campbell's acceptance of responsibility, yielding an offense level of 10. *See* § 3E1.1. For a defendant with a criminal history category of IV and an offense level of 10, the Guidelines provide a sentencing range of 15–21 months. Finally, the pre-

sentence report identified two possible grounds for departure from that range. First, the report indicated that an increase in Campbell's criminal history score might be warranted, since the guidelines artificially treated the three May 24, 1985 convictions as a single incident. Second, the report indicated that under § 2L1.2 *application note* three, an upward departure might be warranted since Campbell's deportation followed his conviction for an aggravated felony.

The district court agreed with the recommendations of the pre-sentence report, and increased Campbell's sentence in two separate steps. First, the district court increased Campbell's criminal history category from IV to V pursuant to § 4A1.3. This increased the sentencing range to 21–27 months. Then, the district court determined, pursuant to § 2L1.2 *application note* three, to depart further since Campbell had previously been deported for committing an aggravated felony. The court settled on a sentence of 54 months to be served upon the completion of Campbell's nineteen year state sentence. This 54 month sentence falls near the high end of the range at offense level 17 (46–57 months) or the low end of the range at offense level 18 (51–63 months). The district court did not consider whether some sentence in the ranges between offense levels 10 and 17 would have been sufficient. This appeal followed.

*Discussion*

Campbell does not contest the district court's decision to depart "horizontally", moving across the Guidelines grid from criminal history category IV to category V. Campbell finds two errors, however, in the second aspect of the district court's departure—from the 21–27 month range to 54 months. First, Campbell asserts that it was improper "double counting" for the district court to depart upward on the ground that the May 1985 convictions were for aggravated felonies, since the court had already relied on that fact in making the horizontal departure from category IV to category V. Second, Campbell asserts that the extent of the second departure was

unreasonable, since the district court failed to consider whether a sentence between 27 and 54 months would be appropriate. We address these arguments in turn.

1. Double Counting

Campbell asserts that the district court erred in departing upward twice since both the § 4A1.3 and § 2L1.2 *application note* three departures were based, in part, on the fact that Campbell had previously been convicted of an aggravated felony.

■ Section 4A1.3 authorizes the district court to adjust a defendant's criminal history category where "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *Id.* Here, the district court concluded that both these requirements were met. While the record is not entirely clear, the parties agree that the district court based this determination, at least in part, on the aggravated nature of the crimes underlying the May 24, 1985 convictions. Campbell does not challenge this phase of the departure.

Section 2L1.2 *application note* three instructs that "[i]n the case of a defendant previously deported after sustaining a conviction for an aggravated felony as defined in 8 U.S.C. § 1101(a), or for any other violent felony, an upward departure may be warranted." Campbell concedes that his May 1985 convictions for attempted murder and sale of controlled substances meet the statutory definition. The only dispute is whether, once the district court had considered these prior convictions in making the § 4A1.3 departure, it could consider them again in making the § 2L1.2 departure.

■ The "double counting" objection in this case is unusual in that it involves a claim that the Guidelines forbid basing two separate upward departures on the same factor. Most of our double counting cases have involved a situation where the district court considers a factor both in setting the initial Guidelines range and in choosing to depart from that range. In that case, the law is clear. The Guidelines limit upward departures to where the court "finds that there exists an aggravating ... circum-

stance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Thus, where the particular factor has already been considered in setting the base level, counting the factor again in making a departure violates § 3553(b) unless the factor is present in a degree which the Commission did not consider. *See e.g., United States v. Coe,* 891 F.2d 405, 410 (2d Cir. 1989) (error to depart upward because of fact of multiple robberies since multi-count analysis in guidelines already accounted for that factor); *United States v. Palta,* 880 F.2d 636, 640 (2d Cir.1989) (improper to depart upward for concealment of identity since Guidelines consider obstruction of justice); *United States v. Colon,* 905 F.2d 580, 585–86 (2d Cir.1990) (error to depart upward for role in the offense since Guidelines address the issue).

█ It is far less clear whether the Guidelines forbid making two separate upward departures for the same act. In *United States v. Cervantes,* 878 F.2d 50 (2d Cir.1989), we indicated in dicta that the Guidelines do not always permit a district court to increase a defendant's criminal history category both for violating a condition of bail and for committing a crime while other charges were pending. *Id.* at 55 n. 3. We reasoned that where the former (the bail violation) was premised on the latter (the commission of a crime while free on bail), only a single adjustment in the criminal history category was authorized. *Id.* In essence, footnote three in *Cervantes* stands for the common sense proposition that the mere fact that a bad act can be described in two different ways does not justify making two separate upward adjustments.

█ The *Cervantes* footnote concerned the propriety of making two horizontal departures for a single factor. We have difficulty imagining an instance where it would be appropriate to count a single factor twice in properly assessing a defendant's criminal history category. However, it may be appropriate to count a single factor both in assessing the defendant's criminal history category and in calculating the applicable offense level since the two measure different things. The offense level represents a judgment as to the wrongfulness of the particular act. *See* 28 U.S.C. § 994(c). The criminal history category principally estimates the likelihood of recidivism. *See* U.S.S.G. Chapter 4, *Introductory Commentary* ("The specific factors included in § 4A1.1 and § 4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of criminal behavior.") Usually, a factor that is relevant to one will be irrelevant to the other. That is, the wrongfulness of one act does not generally depend on the wrongfulness of prior, unrelated acts. Here, however, it appears that both Congress and the Sentencing Commission have concluded that the fact that a defendant was deported subsequent to the commission of an aggravated felony is relevant to measuring the severity of the crime of reentry following deportation.

█ First, the statute under which Campbell was convicted, 8 U.S.C. § 1326, ordinarily provides for a two year maximum sentence for the unlawful reentry of the deported felon. That maximum is increased to fifteen years, however, where the reason for the prior deportation was the fact that the alien had been convicted of an aggravated felony. This strongly suggests a Congressional judgment that the flouting of American immigration laws is a far graver matter where the defendant's prior deportation was for committing a serious crime than where the prior deportation was for a technical violation of the immigration laws.

The Guidelines similarly suggest that the severity of the crime of reentry depends on the reasons for the initial deportation. Application note three of Section 2L1.2 is part of Chapter 2 of the Guidelines, which defines offense conduct, rather than Chapter 4, which designates criminal history categories. The November 1, 1991 edition of the Guidelines (which had not yet been promulgated when Campbell was sentenced) provides for a 16 level enhancement of the offense level when an aggravated felony triggered the prior deportation. § 2L1.2(b)(2). That both the former and

most recent Guidelines treat the prior aggravated felony conviction as part of the offense level powerfully suggests that the prior conviction is a critical part of what makes the current reentry wrongful.

In sum, this case involves the unusual instance where a prior act is relevant to determining both the defendant's criminal history category and the offense level for the charged conduct. While this may be double counting in a literal sense, double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis. Accordingly, we reject Campbell's double counting challenge.

### 2. Reasonableness of the Departure.

Campbell also contends that even if the district court did not err in making two upward departures, the vertical departure was procedurally flawed. In particular, Campbell contends that under our decision in *United States v. Coe*, 891 F.2d 405 (2d Cir.1989), when a district court makes an upward departure of more than one level, the district court must articulate on the record reasons for rejecting each intermediate level. Since the district court failed to consider and reject each intervening level, Campbell contends that the case must be remanded for resentencing. We disagree.

We note at the outset that *Coe* involved a horizontal departure under § 4A1.3. Here, however, the court departed both horizontally pursuant to § 4A1.3 and vertically under § 2L1.2. Campbell challenges only the vertical departure under § 2L1.2.

The difference is important because *Coe* mandates that district courts follow the step by step procedure for horizontal departures, *see Coe*, 891 F.2d at 413. *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), governs the procedures for vertical departures.

In *Kim*, we stated that "when an offense level is deemed inadequate and a judge is contemplating a 5K departure by moving vertically down the sentencing table to a more serious level, the judge should consider the next higher levels in sequence to determine if they adequately

reflect the seriousness of the defendant's conduct." *Id.* at 685. The hope was that by proceeding in this fashion, the district courts would be able to "compare the defendant's conduct, with its aggravating circumstances, to the type of conduct for which the Commission has prescribed more serious punishment," *id.*, and thus impose a proportionate sentence. *Id.* *Kim* quite carefully indicated that district courts "should" use this procedure; *Kim* did not mandate it.

Since *Kim*, several of our cases contain language that might be taken to suggest that the step by step procedure recommended in *Kim* is mandatory for every 5K2.0 upward departure. Thus, in *United States v. Schular*, 907 F.2d 294, 299 (2d Cir.1990) we relied on *Kim* for the proposition that "[t]he next higher offense levels must be considered in sequence when departing from the Sentencing Guidelines range." Similarly, in *United States v. Uccio*, 917 F.2d 80, 86–87 (2d Cir.1990), we stated that "[i]n making a Ch. 5, Part K departure, the sentencing court must move vertically down the sentencing table until it reaches the appropriate higher offense level." Careful examination of *Schular* and *Uccio*, however, reveals that neither case squarely stands for the proposition that the next higher offense levels must be considered in sequence in every case.

In *Schular*, after summarizing the *Kim* method, we stated that "[t]his gradual approach is especially appropriate in the case at bar." 907 F.2d at 299. Thus, *Schular* implies that in some cases, the *Kim* approach will not be appropriate. In *Uccio*, we remanded for resentencing because the district court had not specified whether the upward departure had been made under § 5K2.0 or § 4A1.3. Thus, the discussion in *Uccio* of *Kim* was dicta.

More recent cases indicate that the *Kim* procedure is not always necessary. In *United States v. Pergola*, 930 F.2d 216 (2d Cir.1991) we affirmed an upward departure based on the psychological harm suffered by the victim, despite the fact that the district judge had not expressly considered and rejected each intermediate offense level. We explained that "the requirement of

a specific step-by-step calculation and comparison is not particularly apt where, as here, (a) harm to the victim is at issue, and (b) the type of harm at issue is psychological rather than physical, making observation difficult and quantification nearly impossible." *Id.* at 220.

While *Pergola* applies to cases where the district court departs for factors other than the defendant's conduct, in *United States v. Hernandez*, 941 F.2d 133 (2d Cir.1991) we made clear that the district courts need not follow the *Kim* procedure even where the departure is based on the conduct of the defendant. In *Hernandez*, the defendant pled guilty to one count of weapons possession. At sentencing, the district court departed upward on the ground that Hernandez possessed the weapons in connection with " 'white powder' drug trafficking." *Id.* at 141. The court based the extent of the upward departure on the sentence for an analogous crime—drug possession in connection with weapons. The district court did not expressly consider and reject each intermediate offense level before settling on the extent of the departure. Nonetheless, we stated that the district court's "careful explanation satisfies [*Kim*'s] requirements for upward departures." *Id.* at 140. Thus, *Hernandez* makes clear that for § 5K2.0 departures, the district courts need not make talismanic reference to the *Kim* procedures, so long as there is careful explanation in the record of the reasons for the extent of the departure.

We reaffirmed this view of *Kim* in *United States v. Rodriguez*, 968 F.2d 130, 139–40 (2d Cir.1992). In *Rodriguez*, the district court increased Rodriguez' sentence for conducting a continuing criminal enterprise from level 36 to level 42. The court determined the extent of the departure by referring to a subsequent Guidelines amendment, not directly applicable to Rodriguez, that set level 42 as the offense level for selling the volume of drugs that Rodriguez' criminal enterprise distributed. In approving the departure despite the district judge's failure to explicitly follow the *Kim* procedures, we emphasized that "*Kim* and its progeny were not ... intended to be a

straightjacket." *Id.* at 139–40. We concluded that "mechanical level-by-level review of the extent of the upward departure was unnecessary" where the district judge gave appropriate reasons for the extent of the chosen departure. *Id.* at 140. We see no reason why a different rule should apply to vertical departures made pursuant to § 2L1.2 *application note* three.

This flexible approach is consistent with our view that "a case-by-case approach should be taken with respect to departures" *United States v. Ahuja*, 936 F.2d 85, 89 (2d Cir.1991) and that "sentencing judges are afforded considerable latitude in making upward departures." *United States v. Stephenson*, 921 F.2d 438 (2d Cir.1990). *See also United States v. Aymelek*, 926 F.2d 64, 70 (1st Cir.1991) ("where a departure is warranted, the emphasis should be on ascertaining a fair and reasonable sentence, not on subscribing slavishly to a particular formula.")

By focusing directly on the reasonableness of the departure as manifested in the district court's articulation of its rationale, rather than on whether or not *Kim* is expressly followed, this approach is also in line with the Supreme Court's decision in *Williams v. United States*, — U.S. —, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). In *Williams*, the Court stated that once the reviewing court has determined that the district court correctly decided to depart upward, "the court of appeals may affirm the sentence as long as it is also satisfied that the departure is reasonable under § 3742(f)(1)." *Id.* 112 S.Ct. at 1121. In determining whether the extent of the departure is reasonable, the court should look "to the amount and extent of the departure in light of the grounds for departing" and "examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence." *Id.* The key question is whether the "reasons given by the district court ... are sufficient to justify the magnitude of the departure." *Id.*

In short, the thrust of both *Kim* and *Hernandez* is that the district court must

make clear on the record how the court determined the magnitude of the departure. *Williams* indicates that once the district court has done so, the only question that remains is whether the departure is reasonable in light of the justification given. Here, we find that the district court gave reasons for the extent of the departure, and that the departure was reasonable.

█ In determining the extent of the departure here, Judge Cabranes focused principally on the fact that the Guidelines did not "adequately reflect the congressional action amending the immigration laws to increase the penalty from 5 to 15 years for defendants who were deported for committing aggravated felonies in the United States." Judge Cabranes concluded that this trebling of the statutory punishment warranted at least a doubling of the Guidelines range. In assessing the reasonableness of this decision, it is noteworthy that since the district court sentenced Campbell, the Sentencing Commission has amended § 2L1.2 to reflect the enhanced statutory penalty. Under the Guidelines promulgated on November 1, 1991, where the prior conviction was for an aggravated felony, the district court must raise the base offense level by sixteen levels. Judged in this light, the district court's relatively modest enhancement here, amounting to only seven offense levels, was plainly reasonable.

### Conclusion

We affirm the sentence entered by the district court in all respects.