**UNITED STATES of America**

v.

**Mitchell Frederick PASTER.**

**No. 4:CR–96–221.**

United States District Court,
M.D. Pennsylvania.

Aug. 25, 1999.

Wayne P. Samuelson, George J. Rocktashel, Williamsport, PA, for U.S.

Ronald C. Travis, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, PA, Christopher M. Farella, Shalom D. Stone, Walder, Sondak & Brogan, Roseland, NJ, for Mitchell Frederick Paster.

*OPINION*

MUIR, District Judge.

## I. INTRODUCTION

On August 28, 1996, Defendant Mitchell F. Paster was charged in a one-count indictment with first degree murder, a violation of 18 U.S.C. § 1111. Paster had killed his wife, Dr. Margaret Bostrom, by stabbing her sixteen times with a knife. On November 19, 1997, Paster entered a plea of guilty to second degree murder

which is a lesser included offense under the same statute. On February 4, 1998, a presentence report and an addendum were submitted to the Court. On February 25, 1998, a second addendum and a presentence report with corresponding revisions were submitted.

In the revised presentence report the Probation Officer determined that Paster's criminal history category was I, calculated the base offense level for second degree murder pursuant to U.S.S.G. § 2A1.2 as 33 and increased that base offense level by two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The Probation Officer did not grant Paster any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Paster's criminal history category of I and a total offense level of 35 resulted in a guideline imprisonment range of 168 to 210 months or 14 years to 17 years and 6 months. In paragraph 69 of the revised presentence report, the Probation Officer noted that "[a]n upward departure may be warranted pursuant to U.S.S.G. § 5K2.8, Extreme Conduct." [1]

On February 4, 1998, the Government filed a motion for an upward departure based upon the following Sentencing Guidelines: (1) Section 5K2.8—Extreme Conduct, (2) Section 5K2.0—Premeditation and (3) Section 5K2.6—Weapons and Dangerous Instrumentalities.

Paster challenged the upward adjustment to the guideline imprisonment range calculated by the Probation Officer for obstruction of justice and challenged the lack of adjustment for acceptance of responsibility. Paster also opposed the Government's motion for an upward departure and requested a downward departure for aberrant behavior and victim's conduct. The issues were briefed and a hearing with

respect to the same was held on March 18 and 19, 1998.

On April 21, 1998, we issued an opinion in which we determined, *inter alia*, that: (1) Paster's actions were unusually heinous, cruel and brutal and warranted an upward departure of nine levels from the sentencing guideline range because of extreme conduct; (2) an upward departure for premeditation was not warranted; (3) an upward departure for use of a weapon was not warranted; (4) a downward departure for aberrant behavior was not warranted; (5) a downward departure for victim's conduct was not warranted; (6) an upward adjustment for obstruction of justice was not warranted; (7) a two-level downward adjustment for acceptance of responsibility was warranted; and (8) an additional one-level downward adjustment for acceptance of responsibility was not warranted. U.S. vs. Paster, 17 F.Supp.2d 345, 354 (M.D.Pa.1998). The court concluded that the total offense level was 40, the criminal history category was I and the guideline imprisonment range was 292 months to 365 months, or 24 years and 4 months to 30 years and 5 months. On May 4, 1998, the court imposed a sentence of 30 years and 5 months imprisonment.

On April 19, 1999, the Court of Appeals for the Third Circuit remanded the case to us for resentencing. *U.S. v. Paster*, 173 F.3d 206, 221 (3rd Cir.1999). The Court of Appeals stated that when resentencing Paster the sentence imposed should reflect an additional one-level reduction in his offense level for acceptance of responsibility. *Id.* at 216. Also, the Court of Appeals stated that we should "reconsider the nine-level upward departure for extreme conduct after closer examination of the relevant court decisions and for consideration

---

1. During the change of plea proceeding on November 19, 1997, Paster was advised that the tentative calculation of the guideline imprisonment range was 168 to 210 months. However, Paster was advised that we would not be able to determine the guideline imprisonment range until after a presentence report was prepared, counsel reviewed that report

and the court ruled on any objections by counsel to that report. See Transcript of change of plea proceeding, p. 14. Paster was also advised that "the judge does have authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines[.]" Id. at 15.

of the proportionality concerns raised by the coincidence of the second degree murder sentence and the prescribed sentence for first degree murder." *Id.* On May 26, 1999, the Government filed a brief in support of the nine-level upward departure which was imposed for extreme conduct. On June 14, 1999, Paster filed a brief in opposition. On June 30, 1999, the Government filed a reply brief. On August 6, 1999, oral argument was heard on the issue of whether a nine-level upward departure for Paster's extreme conduct is warranted.

## II. Findings of Fact

In the opinion of April 21, 1998, we made findings of fact. *Paster,* 17 F.Supp.2d at 347–49. In its opinion, the Court of Appeals stated as follows: "After hanging up the phone, Margaret mentioned that she had a friend on the reservation who kept weapons at his house, and that if Paster did not retract his statement she would entice the friend 'to do whatever she wanted.' She then told Paster that she had had between forty and fifty affairs during their relationship, and planned to continue to pursue the relationship with her supervisor." *Paster,* 173 F.3d at 209. No such findings of fact were made by this Court.

The findings of fact set forth in our opinion of April 21, 1998, which are pertinent to this one are as follows:

1. When interviewed by FBI agents, Paster told the agents that while in the kitchen downstairs, he took a knife which was silver in color with a black handle from the butcher block and started upstairs with the knife as his wife was getting out of the shower.

2. Dr. Samuel Land conducted the autopsy on Margaret Bostrom on August 17, 1996. ("Undisputed" hereinafter "U").

3. Dr. Land is a medical doctor specializing in forensic pathology, and has testified as an expert in this field in approximately 100 cases. (U)

4. Dr. Land has conducted approximately 1500 autopsies with approximately 300 of them being homicide cases, including 65–75 stabbing cases. (U)

5. Dr. Land concluded that Margaret Bostrom died of multiple stab wounds to various vital organs of her body. (U)

6. Paster stabbed his wife sixteen times as she was leaving the shower, including numerous slashing wounds which are defensive wounds.

7. Of the 16 stab wounds suffered by her, 10, listed as B–J and L of his autopsy report, were considered immediately life threatening. (U)

8. The stab wounds included 8–9 penetrations of the heart area. (U)

9. The victim also suffered numerous defensive wounds to her hands, arms, and leg, including having one finger almost severed. (U)

10. Dr. Land could not rule out the possibility that one stab wound may have also caused a defensive wound. (U)

11. The victim suffered one stab wound which penetrated thru her body. The knife also completely penetrated a floor tile.

12. Dr. Land had never previously seen the type of injury specified in the preceding paragraph.

13. Dr. Land testified as follows: "There are three stab wounds to the central sternum, which is a very difficult bone to penetrate. It's a very thick, very hard bond. And because the chest cavity is so flexible, it takes a lot of force to get the knife through. These are three perforated wounds to the sternum." [2]

14. Dr. Land concluded that the victim was still alive during the infliction of all

---

2. This finding of fact (No. 35 in the opinion of April 21, 1998) has been altered slightly from the original to reflect Dr. Land's precise testimony at the March, 1998, hearing as shown in the transcript.

the wounds because hemorrhaging existed around all of the wounds. (U)

15. All of the stab wounds to the torso of the decedent ... were immediately fatal causing the decedent's death within minutes of the last stab wound. (U)

16. In Dr. Land's opinion an excessive amount of force was used in murdering Margaret Bostrom based upon: (a) the use of a knife; (b) the excessive number of wounds suffered by the victim throughout her body; and (c) the depth of the penetration of the wounds.

17. Dr. Land concluded that "[t]his is a very violent death. Those are usually the most violent deaths because it's such a personal crime. This was one of the more severe cases I've seen." [3]

18. Dr. Land characterized the stabbing as a violent act with considerable struggle by the decedent. (U)

19. Dr. Land concluded that based on the cumulative damage inflicted upon Margaret Bostrom, it was highly unlikely she would have survived had she been on an operating room table in the best hospital in the country as the last wound was inflicted. (U).

## III. DISCUSSION

■ In its opinion, the Court of Appeals for the Third Circuit determined that "the District Court did not abuse its discretion in awarding a departure for extreme conduct." *Paster*, 173 F.3d at 218. In deciding the correct number of levels for a departure for extreme conduct we will first address the Court of Appeals' mandate to review the relevant case law. *See id.* at 221. In our opinion of April 21, 1998, we examined the decisions in *United States v. Kikumura*, 918 F.2d 1084, 1113 (3d Cir.1990), *United States v. Herrera*, 70 F.3d 444 (7th Cir.1995), *cert. denied*, 517 U.S. 1198, 116 S.Ct. 1695, 134 L.Ed.2d 795 (1996), *United States v. Pergola*, 930 F.2d 216 (2d Cir.1991), and *United States v.*

*Roberson*, 872 F.2d 597 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989), and concluded that a nine-level upward departure for extreme conduct was appropriate. The Court of Appeals stated that it "was not satisfied that [those] cases adequately justify the nine-level upward departure at issue here." *Paster*, 173 F.3d at 220. *Kikumura, Herrera*, and *Roberson* all involve upward departures on more than one ground including extreme conduct and *Pergola* approved a ten-level upward departure for extreme psychological injury.

There is a paucity of relevant cases with respect to the extent of the upward departure for extreme conduct. Altho we in this division of the district handled a substantial number of murder cases resulting from the very large federal prison population within 25 miles of the courthouse, murders comprise a small percentage of federal criminal cases. The cases cited by the parties which involve a departure based upon extreme conduct and which are closest to this case are *United States v. Roston*, 168 F.3d 377 (9th Cir.1999) and *Herrera*. *Roston* is a murder case, *Herrera* is not. Those two cases are moderately instructive of the departure warranted in the present case.

In *Roston*, the Court of Appeals for the Ninth Circuit upheld a seven-level departure for extreme conduct where on the last night of a honeymoon cruise the defendant had strangled his wife and had thrown her overboard. The evidence relied upon by the district court in granting the seven-level upward departure was that Mrs. Roston had been severely beaten and strangled, that she never regained consciousness and that she had drowned. *Id.* at 379. The district court judge "observed that he had never seen a case in which a honeymoon ended in such a chilling and heartless manner." *Id.*

---

**3.** This finding of fact (No. 39 in the opinion of April 21, 1998) was also altered from the original to quote Dr. Land's testimony. The original finding No. 39 reflected a misrecol-

lection of Dr. Land's precise words in an undisputed finding of fact submitted by counsel for both parties.

The facts of this case are somewhat similar to those in *Roston*. In both *Roston* and this case, a husband killed his wife in a brutal manner. Paster stabbed his wife sixteen times as she was leaving a shower. Her heart was penetrated eight or nine times. Ten of the stab wounds were immediately life threatening. One stab was so powerful that the knife penetrated the victim's body and also completely penetrated a floor tile. Other knife wounds completely penetrated her sternum, a very hard bone. All of the stab wounds to Dr. Bostrom's torso were fatal causing her death within minutes of the last stab wound. Dr. Bostrom suffered numerous defensive wounds to her hands, arms, and leg, including having one finger almost severed. Dr. Land, the pathologist who conducted the autopsy on Dr. Bostrom, concluded that Dr. Bostrom was still alive during the infliction of all the wounds because hemorrhaging existed around all of the wounds. Dr. Land stated that Dr. Bostrom suffered "a very violent death" and that her death was "one of the more severe cases [he had] seen." The fact that the Rostons were on their honeymoon when the murder took place and that that defendant threw his wife overboard does not make that defendant deserving of a higher departure than Paster. Because of the similarities between the *Roston* case and this one, we are of the view that the *Roston* case is the most instructive and supports the imposition of a seven-level upward departure for Paster's extreme conduct.

In determining that *Herrera* did not justify the nine-level upward departure imposed on Paster by this court, the Court of Appeals for the Third Circuit stated that that case involved an upward departure of only five levels and that the departure was authorized by more than one guideline. *Paster*, 173 F.3d at 220. We are of the view that the decision in *Herrera* is instructive in determining the appropriate level of departure for Paster's extreme conduct. In *Herrera*, a four-level increase for extreme conduct and a one-level increase for extreme psychological injury were upheld for a defendant who had brutally assaulted his wife for cooperating with authorities in a drug investigation. Herrera began his assault on his wife by striking her on the back of the head with a hammer and punching her in the face. *Herrera*, 70 F.3d at 445. Herrera then hit her repeatedly with the hammer until she was unconscious. *Id.* After his wife regained consciousness, Herrera slashed her throat with a scalpel and carved the skin around her ears. *Id.* Although the victim survived, she suffered brain damage and nerve damage in her right arm. *Id.* After the Court of Appeals for the Seventh Circuit's discussion of the four-level increase for extreme conduct, it stated: "The district court readily could have justified a final offense level higher than 35 and a sentence substantially exceeding 180 months' incarceration." *Id.* at 447. The Court of Appeals for the Ninth Circuit held that the five-level upward departure granted in that case was "conservative" and that Herrera's "total sentence of 180 months strikes us as lenient for such heinous acts." *Id.* at 445, 447.

The above review of the decisions in *Roston* and *Herrera* supports an upward departure of seven levels for extreme conduct in this case. Dr. Land's detailed description of the number of stab and defensive wounds, and location and degree of penetration of several of the stab wounds support a seven-level upward departure for extreme conduct. In addition, the pictures of Dr. Bostrom taken after she was murdered by Paster also demonstrate that a seven-level upward departure is warranted for Paster's extremely heinous, cruel and brutal actions.

█ We will next address the mandate of the Court of Appeals for the Third Circuit to consider "the proportionality concerns raised by the coincidence of the second degree murder sentence and the prescribed sentence for first degree murder." The Court of Appeals stated that "the guideline range for a defendant guilty of first degree murder with a criminal

history of I who, after a two-point reduction for acceptance of responsibility has an offense level of 41, is 324–405 months imprisonment." *Paster*, 173 F.3d at 220. "The guideline range for a defendant guilty of second degree murder with a criminal history of I and a two-point reduction for acceptance of responsibility is 108–135 months imprisonment." *Id.* The Court of Appeals questioned the "lack of disparity between Paster's actual sentence [365 months] and one he could have received had he pleaded guilty to, or been convicted of, a more serious crime...." *Id.* The Court of Appeals stated that "if the government had required Paster to plead guilty to first degree murder in order to escape the death penalty, ... and he enjoyed a two-level reduction for acceptance of responsibility (as he did here), he would have faced a sentence in the range of 324–405 months, ... the median of which is the actual sentence that Paster received." *Paster*, 173 F.3d at 221.

If Paster had pled guilty to first degree murder, his guideline range would not have been 324 to 405 months. Section 5G1.1(b) of the United States Sentencing Guidelines provides as follows: "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." The statutorily required minimum sentence for first degree murder is "imprisonment for life." 18 U.S.C. § 1111(b).[4] If Paster had pled guilty to first degree murder, his imprisonment term would have been the statutorily required minimum sentence of life imprisonment. Having pled guilty to second degree murder and with a nine-level upward departure for extreme conduct and a two-level downward adjustment for acceptance of responsibility, Paster's guideline imprisonment range was 292 to 365 months, or 24 years and 4 months to 30 years and 5 months. There is a vast difference between that guideline imprisonment range and the mandatory minimum life sentence for first degree murder.

With a criminal history category of I, a seven-level upward departure for extreme conduct and a three-level downward adjustment for acceptance of responsibility, Paster's total offense level is 37 which results in a guideline imprisonment range of 210 to 262 months. There is a large difference between that guideline imprisonment range and the life imprisonment term Paster would have received had he pled guilty to first degree murder. The sentence previously imposed of 365 months in our view satisfied proportionality requirements. If it did not, the sentence to be imposed in accordance with this opinion after only a seven level upward departure for this extremely heinous, cruel and brutal crime certainly satisfies those requirements.

## IV. CONCLUSIONS OF LAW

1. An upward departure of seven levels for extreme conduct is warranted.

2. The offense level is 37 and the Criminal History Category is I.

---

**4.** 18 U.S.C. § 1111 provides as follows:
(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the preparation of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder of the first degree.

Any other murder is murder in the second degree.

(b) Within the special and maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

3. The guideline imprisonment range is 210 to 262 months or 17 years and 6 months to 21 years and 10 months.

## V. RECAPITULATION

|  | Levels |
|---|---|
| Total offense level determined by this court on April 21, 1998 | 40 |
| Subtract for acceptance of responsibility ordered by Court of Appeals | (1) |
| Subtract upward departure determined by this court on April 21, 1998, for extreme conduct (9) |  |
| Add upward departure for extreme conduct determined by this order 7 | (2) |
| Revised Total Offense Level | 37 |
| Criminal History Category, no change | I |

An appropriate order will be entered.

## *ORDER*

1. The guideline imprisonment range is 17 years and 6 months to 21 years and 10 months.

2. Sentence shall be imposed on Mitchell Frederick Paster on September 16, 1999, at 4:00 p.m. in Courtroom No. 1, Williamsport, Pennsylvania.