USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1598 UNITED STATES, Appellee, v. EDUARDO GARCIA, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Randy Olen, with whom John M. Cicilline, was on brief for ___________ __________________ appellant. Margaret E. Curran, Assistant United States Attorney, with __________________ whom Edwin J. Gale, United States Attorney, and Gerard B. _______________ __________ Sullivan, Assistant United States Attorney, were on brief for ________ appellee. ____________________ September 7, 1994 ____________________ TORRUELLA, Circuit Judge. Defendant-appellant Eduardo _____________ Garc a pled guilty to one charge of assault on a federal officer in violation of 18 U.S.C. 111(a)(1) and (b). Using the 1992 version of the Sentencing Guidelines, the district court sentenced Garc a to 41 months imprisonment. Garc a appeals his sentence, claiming that the district court erred (1) in selecting the aggravated assault sentencing guidelines; (2) in imposing a four-level specific offense characteristic adjustment for using a dangerous weapon; (3) in imposing a two-level enhancement for obstruction of justice; and (4) in assessing a three-level official victim enhancement. We affirm the district court's sentence. BACKGROUND BACKGROUND __________ On September 15, 1992, Alcohol Tobacco and Firearms Special Agent John Lennon and Detectives Francisco Col n and Robert Drohan of the Providence Police Department's Special Investigations Bureau were on their way to interview a witness when Detective Drohan observed a silver Toyota occupied by two males in the parking lot of a McDonald's restaurant on Broad Street in Providence, Rhode Island. Because neither man appeared to have any food nor appeared to be ordering any, and because the area was a known drug trafficking location, Detective Drohan suspected the two men were loitering for the purpose of making a narcotics purchase. Agent Lennon and the detectives placed the vehicle and its occupants under surveillance. After a short period of time, -2- a black Toyota operated by Garc a parked alongside the silver Toyota. Garc a approached the occupants of the silver Toyota, who were later identified as Raymond Ladou, the driver, and Mark McMullen, the passenger. Garc a then got back in his car and drove the black Toyota out of the McDonald's parking lot followed by Ladou and McMullen in the silver Toyota. Agent Lennon and the detectives followed the cars to Indiana Avenue. They requested a marked cruiser to back them up, and John Mellor, a uniformed policeman, operating a marked cruiser, responded to the request for assistance. Agent Lennon and the detectives drove past both suspect vehicles and observed McMullen in Garc a's car. McMullen and Garc a were both looking down and appeared to be examining something in their laps. Detective Drohan and Officer Mellor used the unmarked police car and the marked cruiser to block the silver Toyota and the street. Agent Lennon and the detectives approached Garc a's car, displaying their weapons and identification, and they yelled "police." When Detective Col n reached the driver's side, he saw numerous packages of what he believed to be heroin on Garc a's lap. Garc a drove off suddenly with McMullen in the car. Garc a turned his car toward Detective Col n who jumped out of the way. Next, Garc a directed the car at Agent Lennon who had to leap onto a parked car to avoid being struck. Garc a then drove at Detective Drohan and subsequently mounted the curb to get around the marked police cruiser. Patrolman Mellor and Detectives Col n and Drohan shot at Garc a's vehicle. Despite a -3- flattened tire, Garc a continued to flee. Agent Lennon took Ladou into custody while Detectives Col n and Drohan and additional marked cruisers pursued Garc a and McMullen. According to the detectives, during the pursuit, Garc a threw an undetermined amount of money and heroin out of the window. Garc a and McMullen were apprehended after they abandoned the vehicle. A subsequent search along the attempted escape route yielded $865 in cash but no drugs. Ladou gave a written statement to the police in which he stated that McMullen had paid him $40 to drive him to Providence, Rhode Island, and that McMullen told him "that a guy was going to come in a black car, a Puerto Rican and that he was going to do a deal." Ladou also stated that although McMullen told him that he was going to Providence to buy a car, Ladou suspected that McMullen was going to participate in a heroin transaction because he knew McMullen was a heroin user. McMullen also gave a written statement to the police in which he admitted that he came to Providence to buy heroin. McMullen described his supplier in this way, "there is a guy I don't know his name, I go to the McDonald's and I punch in a beeper number . . . and then a code number . . . then the number of bundles you want. A while later the guy shows up in a small black car, and brings you the heroin." McMullen knew Garc a by the pseudonym, "Joseph." The government sought to subpoena McMullen for the grand jury investigation of this matter. McMullen, however, -4- avoided service of the subpoena. Authorities later found McMullen, but he was unwilling to cooperate with the investigation. Pursuant to a written plea agreement with the government, Garc a pleaded guilty to assault on a federal officer and using a dangerous weapon in violation of 18 U.S.C. 111(a)(1) and (b), and in return, the government dismissed the charge of attempting to distribute heroin in violation of 21 U.S.C. 841(A)(1). The court adopted the pre-sentencing report's ("PSR") calculation of Garc a's sentence as follows. Because the charge against Garc a invoked the enhanced penalty of 18 U.S.C. 111(b), for assaults involving the use of a deadly or dangerous weapon, the PSR selected the aggravated assault guideline, U.S.S.G. 2A2.2. Section 2A2 sets a base offense level of fifteen. Following the express language of 2A2.2(b) of the Guidelines, the PSR added the four-level enhancement because a dangerous weapon (the car) was used in the assault. The PSR noted that the victim of the 18 U.S.C. 111 assault was Agent Lennon, a federal agent. It further noted that the facts as stated in the prosecution version established that at the time of the offense, Garc a was aware that the victim was a law enforcement officer and that the assault was motivated by the victim's status as a law enforcement officer. Accordingly, the PSR added the three-level, official victim adjustment provided by 3A1.2(a). -5- The PSR also added a two-level adjustment for obstruction of justice under 3C1.1. It found that by throwing heroin out the window during his attempt to avoid arrest, Garc a had materially hindered the official investigation and prosecution. The PSR concluded that as a result of Garc a's action, the government was unable to prove the drug charges. Subtracting three levels for acceptance of responsibility pursuant to 3E1.1, the probation officer arrived at a total offense level of 21. Because Garc a had a criminal history category of I, his sentence range was 37-46 months. The district court adopted the recommendations of the PSR in calculating Garc a's sentence. Garc a contends that the district court made several errors in calculating his offense level for sentencing. The issues addressed in this appeal were the subject of objections Garc a filed to the PSR which his counsel reiterated at sentencing and which the district court did not find persuasive. STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review the district court's findings of fact for clear error and accord due deference to the court's application of the Sentencing Guidelines to the facts. 18 U.S.C. 3742(e); United States v. Ruiz, 905 F.2d 499, 507 (1st Cir. 1990). Our _____________ ____ review of questions of legal interpretation of the Guidelines is de novo. United States v. Phillips, 952 F.2d 591, 594 (1st Cir. _______ _____________ ________ 1991), cert. denied, 113 S. Ct. 113 (1992). ____________ DISCUSSION DISCUSSION __________ -6- The district court applied U.S.S.G 2A2.2, entitled "Aggravated Assault," as the applicable guidelines section to determine Garc a's offense conduct.1 The commentary to 2A2.2 defines aggravated assault, in relevant part, as "a felonious assault that involved . . . a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten)." U.S.S.G. 2A2.2, cmt., note 1. Hence, in order to apply 2A2.2, the aggravated assault provision, the district court was required to find that when Garc a drove his car at the officers, he did so with the intent to cause bodily harm. Garc a does not dispute that his automobile qualified as a dangerous weapon. Rather, Garc a contends that he did not have the intent required by 2A2.2. The district court's finding of intent is a factual finding which we review for clear error. United States v. ______________ Wheelwright, 918 F.2d 226, 227-28 (1st Cir. 1990). Where the ___________ undisputed facts support more than one plausible inference, the sentencing court's choice among supportable alternatives cannot ____________________ 1 Garc a contends that the court should not have applied U.S.S.G. 2A2.2. He contends that the court erred by classifying his conduct as aggravated assault and that the proper guideline for his offense conduct is 2A2.4, entitled "Obstructing or Impeding Officers." Garc a did not argue in the district court that 2A2.4 should apply. Garc a therefore waived this argument. United States v. _____________ Ortiz, 966 F.2d 707, 717 (1st Cir. 1992) (citing United States v. _____ _____________ Dietz, 950 F.2d 50, 55 (1st Cir. 1991) for the proposition that _____ "in [the] criminal sentencing context, arguments not addressed to the trial court at the appropriate time are deemed to be abandoned") (internal citation omitted), cert. denied, 113 S. _____ ______ Ct. 1005 (1993). -7- be clearly erroneous. United States v. Newman, 982 F.2d 665, ______________ ______ 671-72 (1st Cir. 1992), cert. denied, 114 S. Ct. 59 (1993). ____________ Garc a contends that his statement of acceptance of responsibility negates the possibility that he intended to cause bodily harm to Agent Lennon. The Probation Department adopted the following statement by Garc a when it made its recommendations in the PSR: I, Eduardo Garc a, hereby accept responsibility for my actions on September 15, 1992. I was on Indiana Avenue when a car pulled in front of mine and a bunch of men jumped out with guns. I then drove my car in an attempt to get away from this area. During this time I drove my car at a person which I now know was Special Agent Lennon from the Bureau of Alcohol, Tobacco and Firearms. I drove at the agent in an attempt to get out of there. I never intended to hit ________________________ him with my car. It was my intention to _________________________________________ scare him so I could leave. __________________________ (emphasis added). Based on this statement, the Probation Department recommended and the court granted a three-level decrease of Garc a's offense level pursuant to U.S.S.G. 3E1.1, "Acceptance of Responsibility." Garc a contends that his statement was implicitly accepted as truthful by the Probation Department, the Government, and the court when the Probation Department adopted the statement made by Garc a into the PSR and the court granted Garc a a reduction in sentence based on 3E1.1. Garc a therefore argues that his statement shows that he lacked the -8- necessary intent to do bodily harm required for an application of 2A2.2. United States Sentencing Guidelines 3E1.1, cmt., note 1(a), provides that considerations in determining whether a defendant qualifies for the Acceptance of Responsibility reduction include "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ." We do not believe that, by granting Garc a a reduction for acceptance of responsibility, the court was required to accept Garc a's statement that he lacked the intent to cause bodily harm as conclusive. The court may have disregarded Garc a's statement as a self-serving prevarication that was insufficient to negate stronger inferences drawn from the record which suggested that Garc a did in fact have the requisite intent. At sentencing, the court concluded: It seems to me that under these circumstances it is not possible to come to the conclusion that what the Defendant is telling us at this point in time is actually what was on his mind at the time the incident occurred, that he certainly didn't want to strike the officers but if he had to he was prepared to do it. That's enough, it seems to me, to make this an aggravated assault. The district court found that Garc a had the requisite intent to cause bodily harm and adjusted the offense level accordingly. Garc a aimed his car straight at Agent Lennon and each of the officers in turn. Agent Lennon was forced to jump -9- onto a parked car to avoid being hit. This certainly supported the inference that Garc a intended to cause serious bodily harm. The district court did not abuse its discretion in concluding that Garc a had such an intent. Alternatively, Garc a contends that the district court engaged in impermissible "double counting" because the four-level increase in the base offense level under 2A2.2(b)(2)(B) for use of a dangerous weapon was based on the same use of a dangerous weapon that formed the predicate for finding the underlying offense an "aggravated assault" with a base offense level of 15 under U.S.S.G. 2A2.2, rather than a "minor assault" that would have had a base offense level of 6 under U.S.S.G. 2A2.3. As we noted in Newman, 982 F.2d at 673 n.8, the courts ______ of appeals which have addressed this issue have reached different conclusions. See United States v. Williams, 954 F.2d 204, 206-08 ___ _____________ ________ (4th Cir. 1992) ("double counting required"); but see United ___ ___ ______ States v. Hudson, 972 F.2d 504, 506-07 (2d Cir. 1992) (expressly ______ ______ disagreeing with Williams). In Newman, we addressed the ________ ______ analogous issue of whether a defendant's base offense level can be increased pursuant to 2A2.2(b)(3)(B) for causing "serious bodily injury," notwithstanding the fact that the same factor formed the predicate for finding the underlying offense of interference with civil rights under color of law, see U.S.S.G. ___ 2H1.4(a)(2), to be an aggravated assault under U.S.S.G. 2A2.2. We concluded that where a sentencing court calculated a defendant's base offense level in exact accordance with the plain -10- language of the applicable sentencing guidelines, and the guidelines addressing the crime of conviction reflect that they were drafted with the excesses of "double counting" clearly in mind, the sentencing court did not err in increasing the defendant's base offense level pursuant to 2A2.2(b)(3)(B). See ___ Newman, 982 F.2d at 672-75. In United States v. Reese, 2 F.3d ______ _____________ _____ 870 (9th Cir. 1993), cert. denied, 114 S. Ct. 928 (1994), the _____________ Ninth Circuit relied on Newman when it rejected a double counting ______ challenge by defendants whose sentences were enhanced under 2A2.2(b) for use of a weapon and infliction of bodily injury after they were convicted of federal civil rights crimes. Reese, _____ 2 F.3d at 896. We do not believe that the court's enhancement of Garc a's sentence under 2A2.2(b)(2)(B) for use of an inherently dangerous weapon constitutes impermissible double counting. Rather, we agree with the Reese court's interpretation of this _____ situation: [T]he use of a weapon transform[s] . . . [the] offense from a minor assault to an aggravated-assault-in-which-a-dangerous- weapon-was-otherwise-used. That we use a single sentencing factor "twice" to trace the effects of this transformation (first to distinguish minor from aggravated assaults, then to distinguish more and less culpable aggravated assaults) is merely an accidental by-product of the mechanics of applying the Guidelines. It is not impermissible double counting. Reese, 2 F.3d at 896 n.2 (criticizing Hudson). _____ ______ Garc a next contends that the district court erred in increasing his base offense level by two levels pursuant to -11- U.S.S.G. 3C1.1, entitled "Obstructing or Impeding the Administration of Justice." United States Sentencing Guidelines 3C1.1 states, in pertinent part, that a two-level enhancement is warranted "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The commentary includes a non-exhaustive list of types of conduct to which the enhancement applies. One of the examples listed is "destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. 3C1.1, cmt., note 3(d). Garc a argues that the record did not support the finding that he threw any heroin out the car window while being pursued by the arresting officers. We disagree. The district court specifically found that Garc a threw heroin out the window of his car. The following evidence supports this finding: 1) Detective Col n, an experienced narcotics detective, observed what he believed to be heroin in Garc a's lap; 2) Ladou's written statement to the police acknowledging that McMullen had paid him to drive him from New Bedford, Massachusetts, to Providence, Rhode Island, to "do a deal" with a Puerto Rican male in a black car; and 3) it was undisputed that Garc a threw something, including cash, from the car as he fled from the police. Additionally, the record supports the inference that Garc a was McMullen's heroin source and that -12- McMullen had purchased heroin from Garc a in the past. The court's findings that Garc a threw a quantity of heroin out the window was not clearly erroneous. Garc a next contends that even if the record did support such a finding, 3C1.1 expressly excludes his conduct from the scope of the enhancement. He maintains that his conduct was "a spontaneous or visceral or reflexive response occurring at the point arrest [became] imminent" to which 3C1.1 does not apply. See United States v. Sykes, 4 F.3d 697, 699 (8th Cir. ___ _____________ _____ 1993). Garc a incorrectly assumes that the spontaneity of his response will shield him from the two-level enhancement for obstruction of justice. The comment to 3C1.1 provides that where the conduct "occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." U.S.S.G. 3C1.1, cmt., note 3(d). Therefore, a district court properly applies the enhancement where it properly concludes that a defendant's actions materially hinder an investigation, prosecution, or sentencing. The drugs that Garc a allegedly tossed out the window were never recovered. The record permits the inference that the absence of this evidence hindered the prosecution's ability to -13- pursue a conviction on the drug count after its main witness, McMullen, refused to cooperate with the prosecution. Under these circumstances, the district court did not err in finding that the prosecution was materially hindered by Garc a's actions. As a final challenge, Garc a contends that the district court erred in increasing his base offense level by three levels pursuant to U.S.S.G 3A1.2, entitled "Official Victim." That section provides for a 3-level increase if: (a) the victim was a government officer or employee; a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status; or (b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury. U.S.S.G. 3A1.2. Garc a contends that in order for the increase under 3A1.2 to be properly assessed, the assault must have been either motivated by the officer's status, or conducted in a manner creating a substantial risk of serious bodily injury. Garc a argues that neither of these circumstances have been shown to be present in this case. Contrary to Garc a's contentions, we find that the record supports a finding that Garc a's actions were both motivated by the officer's status and conducted in a manner creating a substantial risk of serious bodily injury. -14- The district court found that in aiming his car at the officers, Garc a was attempting to evade arrest. The district court stated: That the evidence is that the police approached the vehicle and announced that they were the police. That under the circumstances it seems quite clear that the Defendant was aware that the people who were seeking to take him into custody were police officers and, therefore, that objection is overruled. The record supports the court's finding. It indicates that Garc a knew that the police officers were approaching him. As they approached the car, the agent and the officers displayed their identification and weapons and yelled, "police." One of the officers was in uniform and used his marked cruiser, with its emergency lights activated, to block Garc a's egress. Additionally, the record supports the conclusion that Garc a's conduct created a substantial risk of bodily injury. Agent Lennon had to jump out of the way to avoid being struck by Garc a's car. Garc a's conduct also gave rise to a police chase which motivated the police officers to fire their weapons, creating an additional substantial risk. These circumstances warranted application of the official victim enhancement. In so finding, the district court did not abuse its discretion. Affirmed. ________ -15-