# United States Court of Appeals
## For the First Circuit

No. 99-1806

UNITED STATES,

Appellee,

v.

CARLOS JOSE ZARAGOZA-FERNANDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Selya, Stahl and Lynch,
Circuit Judges.

Edgardo Rodriguez-Quilichini, Assistant Federal Public
Defender, and Joseph C. Laws, Jr., Federal Public Defender, on
brief for appellant.
Nelson Perez-Sosa, Assistant United States Attorney, Jorge
E. Vega-Pacheco, Assistant United States Attorney, and Guillermo
Gil, United States Attorney, on brief for appellee.

June 29, 2000

**STAHL, <u>Circuit Judge</u>**. On January 12, 1999, defendant-appellant Carlos J. Zaragoza-Fernandez pleaded guilty to a two-count indictment charging him with assault within the maritime and territorial jurisdiction of the United States, <u>see</u> 18 U.S.C. §§ 7, 113 (Count I); and assaulting, resisting, or impeding a United States military police officer, <u>see</u> 18 U.S.C. §§ 7, 111(a), 1114 (Count II). This appeal challenges the sentence the district court imposed with respect to Count II. We affirm.

I.

On November 1, 1998, defendant appeared at the community club of the U.S. Army Garrison, Fort Buchanan, Puerto Rico, where his ex-wife, Rosaura Rivera, was dancing with another person. Defendant appears to have had a history of stalking Rivera, as she had obtained a number of restraining orders against him. In any event, defendant approached Rivera after she left the dance floor, spoke with her briefly about their children, and then punched her in the face.

Defendant immediately exited the club and fled in his car. The military police were notified and given a description of defendant and the car. A military police vehicle gave chase. Meanwhile, military policeman Brian W. Roate, who was assigned to the front gate area of the base, was radioed and advised of

the assault and attempted escape. The outbound lane of Fort Buchanan then was blocked by a military police vehicle. As defendant approached the gate in the outbound lane, he veered to the right around the roadblock and drove onto the adjacent grassy median. At this point, Roate stepped in front of the passenger side of the car, waved his baton, and yelled for defendant to stop. Defendant did not stop; instead, he drove directly at Roate. Roate attempted to get out of the way, but received a glancing blow on the right knee as defendant drove past him. Roate then chambered a round in his 9mm sidearm, but did not shoot at defendant because another officer was in his line of fire. Roate was not injured in the collision. Defendant successfully escaped the confines of the base but was apprehended later.

In sentencing defendant on Count II – the Count pertaining to the incident with Officer Roate – the district court set defendant's base offense level at fifteen because it concluded that the assault on the military police officer was "aggravated" within the meaning of U.S.S.G. § 2A2.2. In doing so, the court determined that defendant's assault on Roate "involved . . . a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten)." Id. cmt., application note 1. The court then enhanced the offense level by three

because defendant brandished or threatened to use a dangerous weapon (i.e., the car) in connection with the aggravated assault, see id. § 2A2.2(b)(2); and by three additional levels because the aggravated assault created the risk of serious bodily injury and because defendant had reasonable cause to know that the victim of the aggravated assault was a law enforcement officer, see id. § 3A1.2(b). Finally, the court adjusted the offense level downward by three to account for defendant's acceptance of responsibility. See id. § 3E1.1. This yielded a total offense level of eighteen and, because defendant was in Criminal History Category II, a guideline sentencing range of 30-37 months. The court then sentenced defendant to 37 months on Count II.

## II.

On appeal, defendant presses two arguments. First, he contends that the district court clearly erred in applying the aggravated assault guideline, U.S.S.G. § 2A2.2, instead of a milder guideline applicable to one who merely obstructs or impedes a government officer, id. § 2A2.4, because there was no showing that defendant intended to cause Roate serious bodily injury. See United States v. Garcia, 34 F.3d 6, 10-11 (1st Cir. 1994) (reviewing deferentially a fact-based determination to apply U.S.S.G. § 2A2.2 on grounds that the defendant intended to

-4-

cause the victim serious bodily injury). Second, he asserts that the court clearly erred in applying the official victim enhancement in U.S.S.G. § 3A1.2 because there was insufficient evidence that the assault was motivated by Roate's status as a law enforcement officer or that the assault created a substantial risk of serious bodily injury.[1] See Garcia, 34 F.3d at 13 (reviewing deferentially a fact-based decision to enhance under U.S.S.G. § 3A1.2). Two subsidiary factual arguments drive these contentions: (1) the evidence showed "only that defendant intended to escape or, at worst, to frighten" Roate (Defendant's Brief at 12); and (2) defendant's Attention Deficit Hyperactivity Disorder (ADHD) prevented defendant from forming the requisite intent to injure Roate.

We reject the two factual arguments on which defendant's appeal necessarily depends. Taking the latter argument first, we think it suffices simply to say that the record as to defendant's psychological profile in no way compels

---

[1]Because we must sustain the official victim enhancement under U.S.S.G. § 3A1.2 if the court did not clearly err in finding that defendant had reasonable cause to know that Roate was a law enforcement officer and assaulted Roate in a manner creating a substantial risk of serious bodily injury, see id. § 3A1.2(b), and because we think it obvious that the same evidence supporting the court's decision to apply U.S.S.G. § 2A2.2 also supports such a finding, see infra, we do not separately address whether there was sufficient evidence to support a conclusion that the assault on Roate was motivated by Roate's status as a law enforcement officer, see U.S.S.G. § 3A1.2(a).

the conclusion that defendant's ADHD prevented him from forming the mens rea necessary to commit an aggravated assault at the relevant point in time. As to the former argument, we think it conclusive that, in Garcia, as here, the sentencing judge applied U.S.S.G. § 2A2.2 to circumstances in which the defendant, in order to facilitate a vehicular escape, "merely" drove his car at the official victims in order to facilitate an escape. See id. at 9. We held that the application of U.S.S.G. § 2A2.2 was within the court's authority in such a circumstance, even if the court believed that Garcia did not actually want to strike and injure the officers, but simply was prepared to do so if need be. See id. at 11 (reproducing a quotation from the judge which tends to suggest that this was the court's belief and then affirming the finding); see also United States v. Valdez-Torres, 108 F.3d 385, 388 (D.C. Cir. 1997) (affirming application of U.S.S.G. § 2A2.2 where defendant accelerated his car toward a law enforcement officer and ignored a shouted warning that he stop, and rejecting the argument that this evidence only showed an intent to escape or, at most, frighten); cf. United States v. Morris, 131 F.3d 1136, 1138 (5th Cir. 1997) (affirming application of U.S.S.G. § 2A2.2 where the defendant swerved his car into a pursuing law enforcement officer's car,

and rejecting argument that such evidence was insufficient to show an intent to injure).

Here, there was abundant evidence that defendant saw Roate in front of his car, had reason to appreciate that he was a law enforcement officer, continued to drive at him, and was prepared to strike him with his car if necessary to effectuate his escape. Indeed, the evidence suggested that defendant actually struck Roate with his car, and that Roate might well have sustained serious injuries had he not managed to get everything but his right knee out of the way. Under the circumstances, and in light of precedent, the district court did not clearly err in concluding that defendant committed an aggravated assault upon Roate. And given these same facts, the court did not clearly err in finding that defendant assaulted Roate with reasonable cause to believe that Roate was a law enforcement officer and in a manner creating a substantial risk of serious bodily injury. Defendant's sentence on Count II is thus beyond reproach.

**Affirmed**.