TORRUELLA, Circuit Judge
(Concurring).
Lugo’s cold-blooded murder of Officer Mejias was as horrible a crime as can be committed. On that point we can agree. If the horrible nature of the murder added some weight to the record evidence supporting the aiding and abet *534 ting charge against Cirilo-[Muñoz], then I would gladly join my colleagues in affirming his conviction. But it does not.
United States v. Mangual-Corchado, 139 F.3d 34, 49 (McAuliffe, J., dissenting in part). This is the dissenting judge’s view on direct appeal regarding the sufficiency of evidence on the aiding and abetting charge, a matter which we are presently foreclosed from revisiting on the merits. Nevertheless, the facts surrounding this conclusion are not irrelevant to the issues before us. This is particularly so in light of the majority’s recognition, especially in its discussion of appellant’s claim of ineffective assistance of counsel, of the “thinness” of the evidence supporting Cirilo-Muñoz’s knowledge that the victim was a police officer. See maj. op. at 530, 531.
I write separately in part because I have considerable disagreement with the majority’s glossing of the events as they unfolded prior to the police officer’s murder by Lugo. Although my view of the relevant facts might, at first glance, appear to bog down on minor details, those facts are significant precisely because of the “thinness” of the case against Cirilo-Muñoz, and because that “thinness” is on a broader scale than my colleagues in the majority acknowledge.
First, there is no evidence that Cirilo-Muñoz was present at “El Ideal” on the day in question as part of Lugo’s drug-selling gang. Cirilo-Muñoz lived only five minutes’ walking distance from this neighborhood hangout, which he regularly frequented to listen to music, play pool and talk to other youths. There is no evidence that he sold drugs, although the record does show that he was a drug user. Second, there is no evidence that Cirilo-Mu-ñoz’s presence at “El Ideal” on November 1, 1994, was at the behest of Lugo or of anyone in his gang. When he arrived, Lugo was already there, and the evidence is uncontradicted that Cirilo-Muñoz was unaware of the reason for Lugo’s presence and his intent to harm the undercover police officer, Mejias. In fact, the record is clear that later, when Lugo tried to incite several of those present to “beat up” Mejias, appellant flat out refused to do so.[8] Furthermore, there is no evidence, and no valid inference can be made from the record, that Cirilo-Muñoz was on the stoop at any time on November 1st when Lugo and his cohorts were accosting Agent Mejias. The majority’s statement to the effect that Cirilo-Muñoz “possibly” was on the stoop, maj. op. at 528, is pure speculation. In fact, the evidence is to the effect that Cirilo-Muñoz did not exit “El Ideal” until after Ramírez and Mangual came out of the stoop to search Mejias’s car for the agent’s gun. Cirilo-Muñoz did not participate in the search and “was just looking.” The fingerprints found on Mejias’s car matching Cirilo-Muñoz supports this account, as they were all lifted from the exterior portions of the car. No evidence exists as to when they were imprinted there.
It is with regard to the evidence surrounding the murder of Agent Mejias that I find the majority’s statement of the facts most problematic because I believe it unfairly places an aura of knowledge of the events to follow on appellant. This implication of knowledge is unsupported by the “thin” record, so “thin” that the government, who is the one properly called upon to meet this burden under our system of justice, has verily skated through the ice.
In this regard, the majority states that “[t]here was no direct evidence that Cirilo- *535 [Muñoz]” heard the exchange between Lugo and “Papilin” in which “Papilin” told Lugo to “take or kill” Mejias, and that “the evidence was unclear as to where Cirilo-[Muñoz] was standing (or. where Papilin and Lugo were standing) when this command was given.” Maj. op. at 529. If that is so — i.e., if the evidence is not direct and is unclear — what should follow, considering that this is a criminal case in which the unstated premise of these statements carries serious consequences for the appellant, is a statement by the majority to the effect that no inference of knowledge regarding this conversation may be imputed upon Cirilo-Muñoz. But no such disclaimer is made. Instead, we are left with the worst kind of imputation, a half-inference, a lingering doubt as to what appellant has to answer for, and a vague question mark as to what weight is actually being given by the court to this non-evidence.
This rustling of soft “evidence” is followed by the majority’s downgrading of the only direct evidence presented regarding Cirilo-Muñoz’s lack of knowledge of Mejias’s fate. See Maj. op. at 529, n. 2. Lugo, the person who actually murdered Mejias, and who took the stand as a government witness, testified that after he shot Mejias upon leaving “El Ideal” in a car with Mangual, he observed that Cirilo-Muñoz and Ramirez were following them in another car. Lugo testified that he had not asked Cirilo-Muñoz and Ramirez to follow them. In fact, Lugo testified that Cirilo-Muñoz only knew about beating Me-jias, but that at that time “didn’t know that he was going to be killed.”[9] Although the majority points to Lugo’s earlier statement to the F.B.I. that incriminated appellant, this statement was made when Lugo was looking to make a deal for himself with the government. By the time of trial, however, Lugo no longer had anything to gain by wrongly implicating Cirilo-Muñoz.
In light of the full factual background of this appeal, I am concerned about the majority’s decision to remand for resentenc-ing to the same judge who sentenced appellant originally and who also decided his § 2255 petition. This judge had two bites at the apple to do so, and in each instance insisted that the “whole picture” supports Cirilo-Muñoz’s enhancement.[10] Yet our *536 own examination of the entire trial transcript failed to produce any evidence establishing Cirilo-Mufioz’s knowledge of the victim’s status as an officer.[11] The majority’s failure to address the district judge’s reasoning and obstinate conclusion has provided an implicit roadmap for the same judge to reimpose a similarly harsh sentence, thus possibly making this remand an exercise in futility.
In fact, there is little said in the majority opinion, or for that matter, in this concurrence, that the trial judge, who heard the flimsy evidence against appellant, was not aware of when he sentenced appellant. Furthermore, from the transcript of the sentencing hearing, a small flavor of which is reproduced in the majority opinion, maj. op. at 530, it is apparent that this judge was not greatly interested in hearing the argument of counsel.[12] This tone is reproduced again when we see the short shrift given by the same judge to appellant’s § 2255 petition, in which he found without much ado not only that he had properly applied the enhancement based on appellant’s knowledge of the victim’s status as an officer — of which there is not a shred of evidence anywhere on the record — but also that defense counsel’s failure to raise this issue on appeal did not violate Cirilo-Mu-ñoz’s constitutional rights.
In my opinion, these recurrent conclusions by the trial judge are not only legally erroneous, which the majority recognizes, but also demonstrate an obstinate predisposition to reach a set conclusion in this case. Resentencing should therefore take place before a different judge. See, e.g., United States v. Muñiz, 49 F.3d 36, 41 (1st Cir.1995) (remanding for resentencing by a different judge where, inter alia, the original judge based his sentence on unsupported factfindings); Mawson v. United States, 463 F.2d 29, 31 (1st Cir.1972) (“It is difficult for a judge, having once made up his mind, to resentence a defendant, and both for the judge’s sake, and the appearance of justice, we remand this case to be redrawn.”). I simply see no reason why this “reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.” See Maldonado Santiago v. Velázquez García, 821 F.2d 822, 832-33 (1st Cir.1987). See also United States v. Hanono-Surujun, 914 F.2d 15 (1st Cir.1990) (remanding to a different judge where a rule *537 has not been fully complied with and there has been a sharp upwards departure from the Guidelines).
Even stretching it to the breaking point, Cirilo-Muñoz’s “participation” and his knowledge of events was minimal and paled when compared to the actions of Lugo — who not only was the leader and principal culprit, even if the government gave him a sweetheart deal — but he was the cold-hearted killer of Officer Mejias. Yet Cirilo-Muñoz received a sentence of life imprisonment as compared with the twenty years imposed upon Lugo. This, after the district judge’s “possible misper-ception[s]” led him to make “a formal finding that Cirilo knew that the victim was a police officer when he (Cirilo) assisted in the venture. But there was no detailed discussion by the district judge of the evidence on which such a finding might rest.” Maj. op. at 530. Of course, there is no evidence in the record that Cirilo-Muñoz possessed the requisite knowledge that the district judge attributed to him, unless he acquired it by extra sensory perception, or that he “assisted in the venture,”[13] unless this term has acquired a new meaning.
This is a case which started out on the wrong foot. Unfortunately it appears destined to continue to suffer permanently from this handicap. “Nothing is more damaging to a new truth than an old error.” Goethe, Spruche in Prosa.

. It would seem that if Cirilo-Muñoz was disinclined to “rough” Mejias up, he would even be less agreeable to aid in his murder, a •fact that, as I will further discuss, is borne out by Lugo's exculpatory evidence.

. Even Mangual, the driver of the Oldsmobile carrying Lugo and Agent Mejias, was shocked and lost control of the car when Lugo first shot Mejias. Mangual asked "What did you do?,” to which Lugo responded “Keep driving or you’re next.”

. The district judge stated that he looked at the "whole picture” to infer that the "defendant knew that the victim was a police officer and [that] he was being killed because he was a police officer.” As evidentiary support, the judge cited the following: (1) Cirilo-Muñoz's arrival 10-15 minutes after Ramirez's arrival; (2) the proximity between the stoop and El Ideal; (3) Lugo's solicitation of Cirilo-Muñoz and others to “beat up” Mejias; (4) Cirilo-Muñoz getting into the car with Ramirez; (5) the inference that Cirilo-Muñoz and Ramirez must have heard the two shots from the Oldsmobile; and (6) Cirilo-Muñoz following in the car, sharing in the money, and driving Lugo home. However, even if we take all these facts in the light most favorable to the court's interpretation, the aggregate fails to establish Cirilo-Muñoz's knowledge of Mejias’s status as an officer. The proffered evidence also falls significantly short of instances where we have found such "reasonable belief” of the victim's status to support the enhancement. See United States v. García, 34 F.3d 6, 13 (1st Cir.1994) (record supports § 3A1.2 enhancement because evidence indicated that the police officers displayed their identification as they approached defendant and yelled "police”); United States v. Carrillo-Figueroa, 34 F.3d 33, 42-43 (1st Cir.1994) (record supports § 3A1.2 enhancement because defendant saw that the "vehicle that [the officer] was driving exhibited characteristics identifying it as an official vehicle”); United States v. Zaragoza-Fernández, 217 F.3d 31, 32-33 (1st Cir.2000) (record supports § 3A1.2 enhancement because of "abundant evidence that de *536 fendant saw [the officer] in front of his car [and] had reason to appreciate that he was a law enforcement officer”).

. As explained, Cirilo-Muñoz did not engage in any of the conversations regarding Lugo's suspicion of Mejias as an officer-Cirilo-Muñoz was not present when Lugo accused Mejias of being an officer, he was not present when Lugo called Ramirez, he was not brought to the stoop to discuss Mejias, and he was not present when Mejias was abducted. We found no evidence that Lugo ever told Cirilo-Muñoz of his suspicion of Mejias's status, much less of his intent to kill Mejias. This is supported by the fact that even Mangual, the driver, was shocked when Lugo shot Mejias, by Lugo’s initial decision to let Mejias drive away, and by Cirilo-Muñoz’s refusal to “beat up” Mejias. We also found no evidence to support any inference that Cirilo-Muñoz suspected Mejias's status prior to the murder, especially given that Mejias often acted outside his official duties. Evidence at trial shows that Mejias purchased crack and gave it to a prostitute, he regularly ordered a flask filled with rum, he drank and played pool with Cirilo-Muñoz and others, and he brandished a gun during a serious confrontation with a debtor. Even Lugo began to have doubts about Mejias's status. As the majority recognizes, "if Lugo's expressed concern was that Mejias was an informant (and not that he was an officer), it is unclear why the district judge thought that Cirilo[-Muñoz] knew or believed Mejias was a police officer.” Maj. op. at 531.

. As counsel was about to argue Cirilo-Mu-ñoz's lack of knowledge, the judge interrupted and stated: "[c]ounsel, that's what the jury decided. I’m not going to get into that.”

. The evidence highlighted by the majority— appellant's presence in the cemetery when Ramirez shot Mejias in the head, who was presumably already dead, as well as appellant receiving Mejias's money and driving Lugo home — would make Cirilo-Muñoz an accessory after the fact, 18 U.S.C. § 3, not an aider and abetter.