**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-4785

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

IPOLITO CAMPOS, a/k/a Polo,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Henry Coke Morgan, Jr., District
Judge.  (CR-03-32)

Submitted:  April 28, 2004          Decided:  June 24, 2005

Before SHEDD and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

Frank W. Dunham, Jr., Federal Public Defender, Larry W. Shelton,
Supervisory Assistant Federal Public Defender, Mary E. Maguire,
Assistant Federal Public Defender, Frances H. Pratt, Research and
Writing Attorney, Norfolk, Virginia, for Appellant.  Paul J.
McNulty, United States Attorney, Michael J. Elston, Michael R.
Smythers, Joseph E. DePadilla, Assistant United States Attorneys,
Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Ipolito Campos appeals from his judgment of conviction and sentence, based on a jury verdict finding him guilty of assault of a law enforcement officer, in violation of 18 U.S.C.A. § 111 (2004) (Count 1); possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A) (2000) (Count 2); use and possession of a firearm in a crime of violence, in violation of 18 U.S.C. § 924(c) (2000) (Count 3); attempted murder of a law enforcement officer, in violation of 18 U.S.C.A. § 113 (2000 & Supp. 2004), 18 U.S.C. § 114 (2000) (Count 4); use of a false immigration document, in violation of 18 U.S.C. § 1546(b)(2) (2000) (Count 5); possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d) (2002) (Count 6); and false representation of a Social Security number, in violation of 42 U.S.C. § 408(a) (2003) (Count 7).

Campos appeals five counts of his conviction and his sentence, alleging four errors by the district court: (1) refusing to grant his motion for judgment of acquittal on Counts 1, 3, 4, and 6; (2) refusing to instruct the jury on the defenses of justification and innocent possession as to Counts 2 and 6; (3) sentencing him on Counts 2, 4, and 6, when it applied the base offense level for first-degree murder under USSG § 2A2.1; and (4) sentencing him on Counts 1, 2, 4, and 6, when it applied the enhancement provided for in USSG § 3A1.2(b). In accordance with

our discussion below, we affirm Campos' conviction, but vacate his sentence and remand to the district court for resentencing.

## I.  CONVICTION

Campos first challenges the sufficiency of the evidence to support his conviction on the assault, attempted murder, and firearm use charges, and one of the firearm possession charges.  In evaluating the sufficiency of the evidence supporting a criminal conviction on direct review, "the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  Glasser v. United States, 315 U.S. 60, 80 (1942).  Substantial evidence is evidence "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).  This court considers circumstantial and direct evidence, and allows the Government the benefit of all reasonable inferences from the facts proven to those sought to be established.  Id. at 858; United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Here, the Government presented evidence that supported the jury's determination that Campos knew the men invading the trailer were police officers, rather than robbers.  First, the police knocked before entering the trailer, and announced their

identity and presence both before and after entering the trailer, actions robbers would not take. Because these announcements were loud enough to have been heard by agents outside the trailer, it is reasonable for the jury to have assumed they were heard by Campos and his roommate. Moreover, while Campos' knowledge of the English language was quite limited, the Spanish word for "police," "policía," sounds similar to its English counterpart,[1] and was used by police repeatedly as they entered the trailer. These were not just words being used by the individuals that Campos overheard. These were announcements, being made repeatedly and loudly to announce the presence of the police. Also, the room in which Campos was in was well-lit and he stood six feet away from Trooper Chambers, who was in uniform, such that it is reasonable to conclude that Campos had a clear view of Trooper Chambers before Campos shot him. Although Campos had prior history with and perhaps a well-supported fear of being a victim of another robbery, the circumstances of this case simply do not support his claim that he reasonably thought that those entering the trailer that night were robbers, rather than police officers. We conclude on the facts of this case, construed in the light most favorable to the Government, that there was ample evidence for the jury to conclude

---

[1]While the Government contends in its brief that Campos "spoke clear English at one point during his testimony," it provides no citation for this testimony, and the record does not appear to support this assertion.

beyond a reasonable doubt that Campos knew those entering his trailer were police officers, such that its verdict as to Counts 1, 3, and 4 was supported by the record, and the district court's denials of Campos' Rule 29 motions for judgment of acquittal as to those charges were proper.

Campos also asserts insufficiency of the evidence to support the jury's verdict as to Count 6, which alleged a violation of 26 U.S.C. § 5861(d) (possession of an unregistered firearm). Specifically, he claims the Government failed in its attempt to prove that Campos knew, based on the physical characteristics of the firearm, that it was illegal, i.e., that the barrel of the shotgun he was charged with possessing was less than eighteen inches long.

We find Campos' claim to be without merit because there is evidence in this record, viewed in the light most favorable to the Government, that would support the jury's finding that Campos knew that his sawed-off shotgun was illegal. First, while Campos claimed he had no familiarity with guns, he admitted at trial that he had handled the shotgun in question on several occasions, testified that he had seen the gun a number of times prior to the night of the incident, and referred to the sawed-off shotgun as the "short one," or the "shorter gun." Further undercutting Campos' claim that he knew nothing about guns was evidence that he fired five rounds in approximately ten seconds in a shot pattern showing

- 5 -

that he clearly was aiming at Trooper Chambers behind the wall, followed by a direct shot hitting Trooper Chambers when the two men were face-to-face. Finally, the Government presented evidence that Campos' residence held several guns, and that police found 168 rounds of various types of ammunition in the trailer.

We find this issue essentially to be based on credibility. While the Government did not present direct evidence to establish that Campos knew the gun's length, it is apparent that the jury found unbelievable Campos' assertions that he was naive in the matter of guns and did not know that the shotgun was sawed off and under eighteen inches in length, in light of the other evidence presented by the Government. Campos' credibility is strictly a matter for the jury and is not reviewable by this court on appeal. United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). We therefore deny this claim.

Next, Campos claims error in the district court's refusal to instruct the jury on the defenses of justification and innocent possession in regard to Counts 2 and 6, the two firearm possession charges. Campos first asserts that the jury should have been instructed on the defense of "justified possession," or justification defense because he "reasonably believed" that he was under unlawful and present threat of death or serious bodily injury. To establish a justification defense, the defendant must show that: (1) he was under unlawful and present threat of death

or serious bodily injury; (2) he did not recklessly place himself in a situation where he could be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. United States v. Perrin, 45 F.3d 869, 873-74 (4th Cir. 1995).

We decline Campos' suggestion to extend the availability of the justification defense to cases where the defendant "reasonably believes" he is under an "unlawful and present threat." The facts demonstrate that Campos was not under any actual present or imminent threat of death or injury. Law enforcement officers were there to serve lawful warrants on him, which they could have done peaceably had he opened the door when they knocked and announced their identity and purpose.

Campos also asserts that the district court erred in refusing to give his requested instruction on innocent possession with regard to Counts 2 and 6. The innocent possession defense requires that the firearm be obtained innocently and held with no illicit purpose, and that possession of the firearm be transitory, that is, that "in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." United States v. Mason, 233 F.3d 619, 624 (D.C. Cir.

2000). Here, Campos claimed he found the gun on February 3, 2003, removed it from the back yard where he found it, and stored it in the oven in an effort to keep children playing around the trailer from finding it. However, unlike the defendant in Mason, Campos demonstrated no intent to turn the gun over to lawful authorities. He took no steps and exerted no effort to relinquish possession of the gun. In addition, Campos' own witness testified that Campos had handled the illegal gun on various occasions prior to the incident, contradicting Campos' testimony that he had only discovered the gun on February 3, 2003. He concealed the gun, still loaded, together with additional ammunition, in the oven of his trailer, where it was easily accessible to him, and where he readily removed it and used it against the agents entering the trailer. We find that the trial judge properly rejected Campos' request for the instruction on innocent possession.

## II. SENTENCE

In determining the applicable sentencing range under the Sentencing Guidelines,[2] the probation officer applied USSG § 2A2.1 to Count 4, the attempted murder charge, and through the cross-reference in USSG § 2K2.1, the firearms guideline, also applied § 2A2.1 to Counts 2 and 6, the firearm possession charges. Section 2A2.1 contains two base offense levels, 28 and 22, depending on

---

[2]U.S. Sentencing Guidelines Manual (2002) ("USSG").

whether the attempted murder, if completed, would have constituted first-degree or second-degree murder.  The probation officer calculated the base offense level for Campos at 28.  In addition, the probation officer assessed a three-level enhancement pursuant to USSG § 3A1.2 to Counts 1, 2, 4, and 6, the assault, attempted murder, and firearms possession charges, on the basis that the offenses involved an official victim.  The district court overruled Campos' objections, applied the higher base offense level as well as the three-point enhancement, and ultimately sentenced Campos by applying the guidelines as a mandatory determinant in sentencing. In so doing, the district court sentenced Campos based on judicially-determined facts found by a preponderance of the evidence, rather than facts found by the jury beyond a reasonable doubt.[3]

The district court sentenced Campos to 151 months' imprisonment on the assault and attempted murder counts, 120 months' imprisonment on the two firearm possession counts, and 60 months on the two false document counts, all to run concurrently. The district court also imposed the mandatory minimum sentence of 120 months' imprisonment on Count 3, the use of a firearm in a crime of violence, to run consecutively to the other counts.  Thus, the total term of imprisonment to which the district court

_____

[3]We note that the district court sentenced Campos fully in accordance with the law and procedure in effect at the time of Campos' sentencing.

- 9 -

sentenced Campos was 271 months.  The district court also imposed five years of supervised release, special assessments totaling $700, and restitution in the amount of $14,735.61.

On appeal, Campos contends that the application of the higher base offense level and the three-point enhancement, which increased substantially his range of imprisonment under the guidelines, constitutes plain error under the Supreme Court's decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004), United States v. Booker, 125 S. Ct. 738 (2005), and this court's original decision in United States v. Hughes, 396 F.3d 374 (4th Cir. 2005),[4] because it was based upon facts not found by the jury beyond a reasonable doubt.

In Booker, the Supreme Court applied the Blakely decision to the federal sentencing guidelines and concluded that the Sixth Amendment is violated when a district court imposes a sentence under the Sentencing Guidelines that is greater than a sentence based solely upon facts found by the jury.  Booker, 125 S. Ct. at 752-56.  The Court remedied the constitutional violation by severing two statutory provisions, 18 U.S.C. § 3553(b)(1) (West Supp. 2004) (requiring sentencing court to impose a sentence within the applicable guideline range), and 18 U.S.C.A. § 3742(e) (West 2000 & Supp. 2004) (setting forth appellate standards of review for

---

[4]Campos' supplemental brief was filed with this court prior to the issuance of our amended opinion, United States v. Hughes, 401 F.3d 540 (4th Cir. 2005).

guideline issues), thereby making the guidelines advisory. <u>United States v. Hughes</u>, 401 F.3d 540, 546 (4th Cir. 2005) (citing <u>Booker</u>, 125 S. Ct. at 756-57, 764 (Breyer, J., opinion of the Court)).

After <u>Booker</u>, courts must calculate the appropriate guideline range, consider the range in conjunction with other relevant factors under the guidelines and 18 U.S.C.A. § 3553(a), and impose a sentence. If a court imposes a sentence outside the guideline range, the district court must state its reasons for doing so. <u>Hughes</u>, 401 F.3d at 546. This remedial scheme applies to any sentence imposed under the mandatory sentencing guidelines, regardless of whether or not the sentence violates the Sixth Amendment. <u>Id.</u> at 547 (citing <u>Booker</u>, 125 S. Ct. at 769 (Breyer, J., opinion of the Court)).

In this case, as in <u>Hughes</u>, the district court sentenced Campos by applying the guidelines as a mandatory determinant in sentencing and based upon facts not authorized by the jury's findings. In light of the change in the law, we conclude that the district court erred in determining Campos' sentence, that the error was plain and affected Campos' substantial rights, and that we should exercise our discretion to notice the error. We therefore vacate Campos' sentence and remand for resentencing. However, as we did in <u>Hughes</u>, we address the propriety of the district court's application of the guidelines, which, of course, are now advisory.

We first address Campos' assertion of error in the district court's determination that the appropriate base offense level under the attempted murder guideline was 28 rather than 22, and his claim that the lower base offense level should apply because his shooting of Trooper Chambers was not done with premeditation and deliberation. We review the district court's factual findings at sentencing for clear error, and its interpretation of a sentencing guideline de novo. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

Campos relies heavily on the fact that the events leading up to the shooting occurred very quickly, noting the period of time from Chambers' entry through the front door until he retreated after being shot by Campos lasted only about ten seconds. He asserts that his actions were consistent with those of a frightened and impulsive man, not of a calculating and deliberate criminal mind.

We find no clear error by the district court in finding that Campos acted with premeditation and deliberation in shooting Trooper Chambers. Instead of opening his door to the police, who were knocking and announcing their presence,[5] Campos used what

_____

[5]Interestingly, Campos does not claim that he did not hear the police knock or give their announcement. Rather, he asserts that he did not comprehend it because he had only a limited ability to understand English.

- 12 -

little time he had[6] to go to the kitchen and retrieve the loaded sawed-off shotgun from the oven, despite the knowledge that there was already another rifle in the room. Campos' actions in leaving the room he was in and retrieving the shotgun, together with the fact that the evidence revealed unquestionably that he fired four shots into a confined area where the troopers were located, in a high pattern, and aimed toward the upper body and head, and fired a fifth shot directly at uniformed Trooper Chambers from a distance of approximately six feet, in a well-lit room, support the district court's conclusion that those shots were made deliberately and with the intent to kill.

Campos further asserts that the district court erred when it enhanced his offense level by three levels pursuant to USSG § 3A1.2, on the basis that the offenses involved an official victim. The district court's factual findings in applying USSG § 3A1.2 are reviewed for clear error. United States v. Zuragoza-Fernandez, 217 F.3d 31, 32-33 (1st Cir. 2000). The district court overruled Campos' objection and applied the three-point "official victim" enhancement based on its factual finding that Campos understood that the men entering his trailer were police and

---

[6]We previously have held that no particular period of time is essential to a finding of premeditation and deliberation. Faust v. North Carolina, 307 F.2d 869, 871 (4th Cir. 1962).

nonetheless fired at them.[7] We find no clear error in the district court's conclusion that Campos had reasonable cause to believe that Trooper Chambers and the others were law enforcement officers, based upon the uncontested facts that the agents arrived at the trailer in multiple cars, knocked loudly on the door, and entered while announcing repeatedly that they were police officers there to serve a search warrant.

We find to be without merit Campos' specific contention that the district court erred in applying subsection (b) of USSG § 3A1.2 to Campos' assault and attempted murder convictions (Counts 1 and 4), because Campos wounded Trooper Chambers during the course of the offense, see, e.g., United States v. Farrow, 198 F.3d 179, 198 (6th Cir. 1999), and to the firearms convictions (Counts 2 and 6) because Campos used a firearm when he assaulted Trooper Chambers in a manner creating a substantial risk of serious bodily injury. United States v. Braxton, 903 F.2d 292, 299 (4th Cir. 1990), rev'd on other grounds, 500 U.S. 344 (1991).

### III. CONCLUSION

Accordingly, although we affirm Campos' conviction, we vacate his sentence and remand to the district court for resentencing in accordance with Booker and Hughes. We dispense

---

[7]While the district court did not specify on which subsection of USSG § 3A1.2 the enhancement was based, the facts support application of subsection (b), rather than (a).

with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>