**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 15, 2011
Decided August 3, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-1248

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 10-cr-40004 |
| DARRIEN DARVIN IRVING, *Defendant-Appellant*. | Michael M. Mihm, *Judge*. |

**O R D E R**

Darrien Irving was convicted of possessing a firearm despite his prior felony conviction, *see* 18 U.S.C. § 922(g)(1), and sentenced to 48 months' imprisonment. He appeals, arguing that the district court misapplied a guidelines enhancement for assaulting a police officer, *see* U.S.S.G. § 3A1.2(c)(1). Irving admits he scuffled with arresting officers but contends that he did not threaten them with a "substantial risk of serious bodily injury," as the guideline requires. Because the record amply supports the district court's application of the official-victim enhancement, we affirm.

Irving was previously convicted of aggravated unlawful use of a weapon, a felony. On the night of his clash with arresting officers, Irving sold crack cocaine at a residence that

officers entered in search of a suspect. When Officer Franks began questioning that suspect, Irving charged toward Officer Franks and attempted to flee.

As Officer Franks tried to restrain Irving, Irving escalated the physical altercation outside the residence on an icy stoop, six concrete stairs off the ground. The two exchanged blows at the top of stairway. A steel pipe banister ran along one side. A retaining wall bordered the other. And concrete stairs descended from the stoop several feet down onto icy pavement. Irving continued to wrestle Officer Franks until Irving eventually pushed him off the edge of the stoop, so that Officer Franks collided onto the pavement, skinning his shins.

Irving then brawled with several officers on the sidewalk below. He punched and kicked Officer Franks again. He bit another officer's finger. One officer tasered him. Another struck him in the leg with a baton. Despite the taser and baton strikes, Irving continued to fight until several other officers tackled him. After attempting to kick Officer Franks a final time, Irving was finally subdued with pepper spray and placed into a patrol car. After the confrontation, officers found Irving's loaded pistol strewn on the sidewalk near the scene of the brawl. There was no evidence, however, that Irving reached for his pistol or that officers thought he was armed during the altercation.

Irving pleaded guilty to unlawful possession of a firearm, and the probation officer recommended a total offense level of 21, and a criminal history category of IV, which yielded a guidelines range of 57-71 months' imprisonment. In arriving at these calculations, the probation officer added six levels because during the brawl Irving threatened arresting officers with a "substantial risk of serious bodily injury," *see* § 3A1.2(c)(1).

At sentencing, Irving contended that the official-victim enhancement was inapplicable. He claimed that his conduct did not threaten officers with serious injury. The government disagreed, arguing that the stipulated facts supported the enhancement. The parties also stipulated that Officer LaGrange, the one that Irving bit, received a tetanus shot, antibiotics, and two stitches.

After reviewing the evidence, the district court overruled Irving's objection and imposed a six-level enhancement under § 3A1.2(c)(1). It found that Irving's fight with Officer Franks on the stoop, "itself create[d] . . . a risk of substantial injury," and that the bite and violent confrontation further demonstrated "very violent" resistance that endangered the officers. Although Irving concedes that during the clash he may have possessed the loaded pistol later discovered on the ground, the district court did not consider this possibility when applying § 3A1.2(c)(1). The court sentenced Irving to 48 month's imprisonment, 9 months below the bottom of the guidelines range.

On appeal, Irving maintains that the district court erroneously applied the official-victim enhancement. Section 3A1.2(c)(1) applies when a defendant has (1) assaulted a police officer during an offense or while fleeing; (2) created a substantial risk of serious bodily harm to the arresting officer; and (3) knew or had reason to believe that the person assaulted was an officer. *See United States v. Robinson*, 537 F.3d 798, 802 (7th Cir. 2008). Irving disputes only the second requirement: whether the assault created a "substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c)(1). We review for clear error the district court's finding that the assault in this case created such a risk. *See United States v. White*, 443 F.3d 582, 592 (7th Cir. 2006).

Irving first contends that, historically, federal courts have applied § 3A1.2(c)(1) only when a suspect either threatens an arresting officer with a dangerous weapon or assaults an arresting officer with such ferocity that serious injury is actually inflicted. He argues that his conduct is unlike either of these two scenarios and, hence, that the enhancement does not apply.

As an empirical matter, Irving's position is somewhat overstated. He is correct that federal courts frequently apply the official-victim enhancement when a suspect threatens arresting officers with a dangerous weapon, *e.g.*, firearms, knives, or automobiles. *See Robinson*, 537 F.3d 798, 802 (7th Cir. 2008) (attempting to draw firearm); *United States v. White*, 222 F.3d 363, 376 (7th Cir. 2000) (pointing firearm); *see also United States v. Hampton*, 628 F.3d 654, 661 (4th Cir. 2010) (reaching for loaded firearm); *United States v. Hill*, 583 F.3d 1075, 1078 (8th Cir. 2009) (repeatedly reaching for firearm); *United States v. Zaragoza-Fernandez*, 217 F.3d 31, 32-33 (1st Cir. 2000) (swerving vehicle into officer). But less frequently federal courts also apply the enhancement in circumstances where a suspect wielded no dangerous weapon and where no serious injury was actually inflicted. *See United States v. Ashley*, 141 F.3d 63, 68-69 (2d Cir. 1998) ("The defendant need not have been armed in order for his conduct to have posed such a risk; the lack of weapon does not given an arrestee carte blanche to commit mayhem . . . .").

More importantly, Irving is mistaken in suggesting that § 3A1.2(c)(1), by its terms, applies only when the defendant wields a firearm or inflicts serious injury. The text of § 3A1.2(c)(1) does not support his interpretation. Rather the provision broadly applies to all assaults of law enforcement officers during an offense or while fleeing that create "a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c)(1); *see Robinson*, 537 F.3d at 802. The focus is on the *potential* for danger. *See Ashley*, 141 F.3d at 68; U.S.S.G. § Application Note 4(B) (enhancement applies to any "more serious injury that was risked, as well as actual serious injury bodily injury (or more serious injury) if it occurs").

Irving insists that any risk he posed was insubstantial. The record, however, amply supports the district court's finding that Irving's violence substantially endangered arresting officers with serious bodily injury. Irving wrestled Officer Franks and shoved him off the icy stoop, forcing him to crash several feet below onto icy pavement. When falling, Officer Franks could have struck his head, torso, back, or limbs on the steel pipe banister, on the concrete stairs, on the retaining wall, or on the pavement below. Although Officer Franks suffered only skinned shins, assaulting an arresting officer under these perilous conditions risked serious injury from the many ways the officer could have collided into unforgiving steel or concrete. *See e.g. Foradori v. Harris*, 523 F.3d 477, 482 (5th Cir. 2008); *see also* Brenda J. Shields et. al., *Epidemiology of Balcony Fall-Related Injuries, United States 1990-2006*, 29 AM. J. OF EMERGENCY MED. 174-180 (2011) ("[B]alcony falls are an import cause of injury in the United States."). Moreover, Irving's bite also risked serious bodily injury because "a human bite is about the most dangerous bite that [one] can receive." *See e.g.*, *United States v. Sturgis*, 48 F.3d 784, 787 (4th Cir. 1995). The district court also reasonably inferred that Irving battled officers violently, thereby substantially endangering them, because it was necessary to deploy tasers, a baton, and pepper spray to subdue him.

AFFIRMED.